The Judges
delivered their opinions.*
Judge Carr.
Reuben and George Sizer, administrators of John Sizer, sued out a writ against John Walden, on a bond or bill penal, (we do not know which) for $1916, to be discharged by $ 958. Bail was' required. William Dickinson became bail. An office judgment was taken against the defendant and bail, and not being set aside at the proper Term, was confirmed, and an execution issued. Dickinson filed a bill to injoin this judgment and execution, on the *114 ground that he entered himself special bail, with a Judge of the General Court; and being obliged to go to Richmond, about the time of the office judgment Court, handed tbe recognizance to his son, who, he expected, would attend the Court, and requested him to deliver it to the Clerk, and have the proper entry made on the record: that his son not attending Court, gave the paper to counsel practising in the Court, who promised to deliver the same to the clerk, to have the proper entry made, and the defendant delivered: that this was forgotten by the counsel, and the office judgment confirmed, by the rising, of the Court.
The defendant answers, that he resides afar off, and knows nothing of the circumstances stated in the bill. He calls for strict proof; but contends, that if the whole case stated were proved, it could not affect him, or take from him the advantage which the law, without his co-operation, has given him.
The only evidence in the cause is the affidavit of the plaintiff’s son, of Mr. Lomax, of Woolf oik and Waller. The two former verify the statement in the bill, with respect to the recognizance; the two latter state that they have known the -principal debtor, Walden, many years, and never knew him to conceal himself or his property. We gather, both from the bill and answer, that he is now insolvent; and the answer adds, that since the judgment, which is the subject of the injunction, was obtained, he has taken the benefit of the insolvent law. There is also in. the record, evidence of a motion made before a subsequent Term of the Superior Court of Spotfsylvania, for leave to the bail, to file the recognizance, níme pro tunc. The Chancellor dissolved the injunction, and the plaintiff appealed. ■ j
I have entertained but one opinion on this case, since I heard it argued; but as it involves principles of importance, and more especially, as some of my brethren seemed, in conference, to take a different view of it, I have examined it with my best attention.
*115 The idea of one man’s paying money for another, strikes us at once as unjust, and the surety who is prosecuted for the debt of his principal, has always our sympathies enlisted in his favor. To check these, and prevent their influence on our judgments, it is not amiss to recollect, that the creditor, in suing, is only seeking a just .debt, in the mode given by the laws of the land: that those laws, by enabling him to demand bail, intended at the same time, to save the debtor from imprisonment, and to give the creditor additional security to his debt: that when he makes this demand, he evinces his determination not to trust to the debtor alone, while the bail, by his undertaking, proves that he does mean to trust him; and we know that “he who trusts most shall lose most,” What may be the considerations which influence the bail to incur the obligation, we know not. It may be friendship, or value received. He may owe the debtor, or may be secured by that very property, which, without his interference, the debtor might have given up for the release of his body. However this may be, the bail enters fairly into a solemn obligation, which by regular operation of law will subject him to the payment of the debt, unless he takes those steps which are prescribed, in order to protect himself. If he takes them, he is safe. ' If not, the creditor has the law, and their equities are equal. Thus, in Croughton v. Duval, 3 Call, 74, the President says, that “though sureties are favoured in equity, and will not be charged further than the law charges them, fair creditors are also favoured in that Court, and will not be deprived of their legal rights, without some fraud or neglect in doing what they are bound to do.” The same doctrine is held in Anderson v. Anderson, 2 Call, 163, where a marriage settlement, made to protect the property of the wife, was held void against the husband’s creditors, because not recorded in due time; and it ivas declared by the Court, that equity would not interpose in such a case, though the i’ecording were prevented by accident, or unavoidable necessity; yea, even though it *116 were prevented by fraud, if the creditors were neither part¡es nor pr;v;es -†0 the fraud. That the creditor, then, will be permitted to enjoy every legal advantage fairly gained, I to be the general rule.
Whether the case before us has any circumstances, which will take it out of the rule, remains to be enquired. The plaintiff relies on two: 1. That the Statute authorising a recognizance of special bail to be taken, before any Judge of the General Court, &c. requires that the person taking the recognizance, shall transmit it to the clerk; thus, that in this case, it was the duty of the Judge who took it, to send the recognizance to the clerk: that, any failure in this point, was the failure of the Judge, and ought not to injure the bail. 2. That even though the bail, by-receiving the recognizance from the Judge, took upon himself the duty of delivering it to the clerk, he has employed, in the discharge of that duty, ordinary care and diligence, and ought not to suffer, if, by accident, the means used have failed.
As to the first. The Statute certainly did not mean to impose on the Judge taking the recognizance, the duty of delivering it personally to the clerk; nor yet, of being answerable for its safe and timely delivery. It was not his duty to hire a messenger to carry it. The law says, he shall transmit it to the clerk. When special bail is taken in the country, it will either be the appearance bail who becomes special bail, and then he being the person most interested in the return of the recognizance, will of course take possession of it, and return it; or the defendant will procure some other person to enter himself bail, and then, such person, or the defendant himself, will take charge of the recognizance for the purpose of delivery. In either case, it is a matter with which the plaintiff has nothing to do. The law gives him a judgment against the defendant and appearance bail, of course. If the recognizance is never returned to the clerk, it can raise no equity against him, unless he were instrumental in preventing its return. Suppose, instead of the appearance bail, some-other had *117 entered himself special bail, before the Judge; and this recognizance, failing to reach the clerk in time, the office judgment had stood confirmed by the rise of the Court. Would this have given the appearance bail an equity to injoin the judgment ? Surely not; and it does not seem to me to change the case, that the appearance bail himself had entered into the recognizance. But in truth, I am considering a case not before the Court. The appearance bail did take possession of the recoguizance, and thereby wholly exonerated the Judge, and took upon himself the risque and responsibility of delivering it. We know that he never did deliver it: that it never was tendered to the clerk: that there never was any special bail given in the suit.
But it is contended, that notwithstanding this, such a case is made out as will compel a Court of Equity to interpose, and take from the creditor the judgment, which he has gotten against the appearance bail, for want of special bail. The case stated in the bill is, that the plaintiff, having important business at Richmond, about the time that the Superior Court of Spottsylvania would sit, gave the recognizance to his son, and requested him to give it to the clerk, and have the entry made: that his son having business at Caroline Court, which sat at the same time with that of Spottsylvania, did not attend the latter, but gave the bond to a lawyer, with a request to attend to it, and that lawyer forgot it. This, I say, is the case stated; but even this case, feeble as it is, is not made out. The plaintiff is put, by the answer, to the proof of his whole equity; yet we have no evidence of the slightest business rendering a journey to Richmond necessary at that time.
It was said in the argument, that this Court had decided cases like the present, in favor of the equity set up against the judgment. I have looked through the Reports, and can find none but the case of Smith & Morton v. Wallace, 1 Wash. Rep. 254. In that ease, the Sheriff, having become appearance bail, offered to the clerk a bail piece, (as it is called in that case,) which he not considering good, took *118 a judgment at the Rules against the defendant and Sheriff At the office judgment Term, the bail piece was again offered to the clerk in Court, and he again objecting to it, it was offered to the plaintiff’s attorney, who, thinking it sufficient, said he should not object to it. It was then given by the defendant’s counsel to the clerk, and he was directed to file it; but he not having heard what the plaintiff’s counsel had said, and still considering the bail piece bad, took no notice of it, but entered a plea for the Sheriff. Judgment was afterwards gotten against the Sheriff, and he filed a bill for relief. The Court sustain the bill, on the grounds, that the bail piece was a good one: that the plaintiff’s counsel had acknowledged its sufficiency; and that this excused the Sheriff of the negligence imputed to him. When the counsel assented, there was no necessity of moving the Court on the subject Now surely, the case before us cannot be compared with this, in any of its strong points. The recognizance was never tendered to the clerk at Rules; was neve1- in Court; never the slightest effort made to enter special bail, and set aside the office judgment. The bail had gone one way, without the least cause proved for his absence, his son another, and the lawyer had business enough of his own to attend to. Suppose the bail had been present himself, with the bail piece in his pocket; and had been so much engaged about other matters, as to have forgotten it. Could this have raised an equity against the judgment? And is not the case the same? He appointed an agent, who made another agent, who forgot it.
Finding no ground of support for this bill in any decisions of this Court, I have looked to the English books, and to the various heads of equitable jurisdiction. The Courts of Law in England; exercise equitable jurisdiction of the most liberal kind, in every thing respecting bail. With them, the bail to the Sheriff or bail below (our appearance bail,) is not liable to a judgment at once, or to a joint judgment against him and the principal. But if bail *119 above is not put in, the plaintiff may take an assignment of the bail bond, and sue on it; and then, the bail has eight days after the return of the latitat, to surrender the principal. The books are full of applications to the Court, sometimes to enlarge the time of delivery; sometimes to enter an exoneretur. There is no Statutory provision on these subjects, but they are governed by the rules of the Court; and these rules are formed and administered in the spirit of equity; indeed, it is called their equitable jurisdiction. I have examined these cases, and will quote a few to shew their application to the present.
Grant v. Fagan, 4 East. 189. Motion to enlarge the time for bail to render their principal, upon an affidavit, that the principal, who was in France and about to return, had been made a prisoner of war under the late edict of the French government, under which, contrary to the former usage of nations, they had arrested all British subjects, who happened to be in France at the breaking out of the war; and the case was compared to those, where the bail of defendants sent out of the kingdom under the alien act, had been relieved, (Merricks v. Vaucher, 6 Term Rep. 50. Coles v. Dehayne, Ib. 52,) as also, where the principals, after their arrest and giving bail, had become Peers, (Trinder v. Shirley, Doug. 45,) or members of the House of Commons, (Langridge v. Flood, Tidd. 152,) in which, and similar cases, bail were considered to be under no imputation of laches; it becoming out of their power, without any fault of theirs, to comply with their undertaking to render their principals. Lord Ellenborongh: “ In all those cases, the render becomes impossible by the act or law of our own State, which excuses the performance of the condition; but there is no case where this indemnity has been induced by the act of a foreign power; and as to the incapacity of the bail to render their principal without any default of their own, the same excuse might as truly be made in the case of the sickness of the principal, so as to make him incapable of removal *120 without endangering his life, where, nevertheless, the bail are answerable. ”
Wynne v. Petty, 4 East’s Rep. 102. Motion by bail to enlarge the time of delivery of their principal, on affidavit of a surgeon, that he was so sick that a removal would endanger his life. The Court at first doubted, whether it could be granted. They thought, that the inconvenience ought rather to be borne by the.bail, who must bo fined for not complying with their undertaking, than by the plaintiff, who otherwise would be deprived of his right. Afterwards they referred to a case furnished by the master, where, in proceedings against the bail by Scire Facias, on the return day, application was made for further time, to render the defendant, on affidavit of a physician, that it would most probably kill the defendant to remove him. But the Court said, that it could not be granted, and they must adhere to their rule of Court: that the hardship of a particular case would not justify them in departing from the established practice of the Court; and where one party must suffer by the act of God, they could not interfere.
Clarke v. Hopper, &c. 3 Taunt. 46. Best, Serjeant, obtained a rule to set aside'proceedings against bail, under these circumstances. The defendants became bail for Wilson, in a suit brought before his bankruptcy. He was declared a bankrupt, and obtained his certificate, before the time of pleading. He failed to plead. The plaintiff took an interlocutory judgment, executed a writ of enquiry, signed final judgment, sued out execution, and proceeded regularly against the bail. It was contended, that the bail, not being fixed when the certificate was obtained, ought to be relieved: that if the principal had pleaded his bankruptcy, it would have been a complete defence; and that the bail ought not to suffer by his negligence, especially as this was an application to the equitable jurisdiction of the Court. But the Court said, that in every case the bail put themselves in hazard of suffering by the folly and negligence of their principal: that it is their business to watch the pro *121 ceedings: that if they had searched the files of the Court, they would have found a Ca. Sa. returned nihil, which was notice that the plaintiff meant to proceed against them. They, therefore, refused to permit them to avail'themselves of the bankruptcy; but as the original judgment had gone by default, they suffered them to make up an issue to try the right; the bail piece, in the mean time, to stand as a security.
Thus, we see, that the Courts in England, though exercising equitable powers, hold the bail to a strict and diligent attention to their own interest and safety: that they shall watch the proceedings; and even though prevented from rendering their principal, by the visitation of sickness, they will not relieve, because they must do it at the expense of another; and because, in questions de damno evitando, they will not remove the burthen from the shoulders of one man, to those of another equally innocent; and this is the true equitable doctrine, to be traced through the whole system.
Unless you can attach some equity upon the conscience of a party, you never can take from him a legal advantage. This is the ground of purchaser without notice. A. sells a tract of land to B. for $ 10,000, and the whole sum is paid down. JÍ Court of Equity would compel A. to convey. But if he sell and convey this land to C. and C. pay the money for it before notice of B’s equity, C. will hold the land. Why ? Because he has done nothing unfair, and has the legal advantage. So in accident. It must be such an accident, as renders it unconscienfious in the other party to use his legal advantage, and the accident must be wholly unmingled with any fault or negligence of the party seeking relief. Thus in the Marine Insurance Company v. Hodgson, 7 Cranch, 332, C. J. Marshall says, “ without attempting to draw any precise line, to which Courts of Equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law; it may safely be said, that any fact which *122 clearly proves it to be against conscience, to execute a judgmerit, and of which the injured party could not have availed himself in a Court of Law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a Court of Equity.”
Can any man say, that the accident here has been unmixed with any fault or negligence, in the plaintiff or his agents? Or, that it is against conscience for the defendant to avail himself of the judgment, which the regular operation of law has given him? Try the question another way. It is a general head of equity to relieve against forfeitures and penalties. Take it, that this is a forfeiture which the bail has incurred, by failing to enter special bail, and set aside the office judgment. This is surely as high ground, as he can possibly assume. Does the case, in this aspect, authorise the relief asked? I say no; unless it furnishes clear evidence, that the accident was unavoidable, and that the case lies completely in compensation. To shew this, I will cite a few authorities.
In Eaton v. Lyon, 3 Ves. 690, Lord Alvanley, M. R. says: “At law, a covenant must be strictly and literally performed; in equity, it must be really and substantially performed, according to the true intent and meaning of the parties, so far as circumstances will admit. But if by tin-avoidable accident, if by fraud, surprise or ignorance not wilful, parties may have been prevented from executing it literally, a Court of Equity will interfere; and upon compensation being made (the party having done every thing in his power, and being prevented by the means l have alluded to) will 'give relief. ”
In 14 Ves. 289, Saunders v. Pope, Lord Erskine says: “ Undoubtedly, unless it is plain that full compensation can be given, so as to put the other party in the same situation, a Court.of Equity ought not to act; for such a juris" diction would be arbitrary.”
*123 Sparks v. Proprietors of Liverpool Water Works, 13 Ves. 428, a by-law of the corporation provided that calls should be made from time to time, on the stockholders, for such sums as were assessed, and that members making default shall receive notices, and unless payment be made in ten days after such notice sent, shall incur the loss of their stock. Under this law, the plaintiff had incurred the loss of his stock,' and applied to the Court for relief, stating, that the lapse arose from ignorance of the call, from accidental circumstances, and absence from home when the notice was left. The relief was refused on two grounds: 1st, that it was a case in which compensation could not with certainty be made, because the operations of the company depended entirely on the punctuality of the stockholders in paying the calls, and the injury of failure could not be estimated. 2d. The accident was not unavoidable. The Master of the Rolls said on this point, “accident here is only the want of precaution. The plaintiff did not inform himself of the orders and rules of the company. It was easy for the plaintiff to direct the clerk to send the notices as he pleased. The Court cannot relieve against such accidents. The plaintiff ought to have taken all due pains to inform himself.”
In Rolfe v. Harris, 2 Price’s Exch. Rep. 206, Sir Thomas Plumer confines the cases of relief to inevitable accident, if the injury be capable of compensation; but if the acts of transgression be wilful, or compensation impracticable, the Court will not interfere. See also Hill v. Barclay, 18 Ves. 56. White v. Warner, 2 Meriv. 459; in both which cases it was decided, that where a tenant had covenanted to insure the premises from fire, with a clause of reentry for failure, the Court would not injoin an ejectment, brought by the landlord for the forfeiture, although no loss had happened, (the premises not being touched by fire;) for, in the first place, the failure was caused by no accident, but wilful; and secondly, there was no computing the risque, which the landlord ran, of losing the tenements by fire, while uninsured, for which the tenant might have been *124 wholly unable to pay. See also Skinner v. Dayton, 2 Johns. Ch. Rep. 526. 1 Ball & Beat. 47, 373. Madd. Ch. 27. From all these cases, it clearly appears, that to aut.horise the relief asked for, the failure must have been the result of inevitable acc.ident, and the case must lie completely in compensation. I have already shewn, that here, the accident, (if it can be so called,) resulted from gross negligence. Let us see whether the case admits of compensation. Can you place the plaintiff at law precisely where he would have stood, if the bail bond had been filed ? What would have been his situation then? He would have had an office judgment against the defendant and bail, subject to be set aside by plea. • If set aside, he would have gotten a judgment against the defendant, then not insolvent that we know of, and might have made the money. He had the chance of fixing the bail for the debt. He had the chance, if the bail delivered up the principal, of praying him in execution, and thus of getting the benefit of what he might give up, if he swore out. Can you replace him now on this ground? Not unless you can call back time, and erase from his records the events that have since happened. But fugit irrevocabile tempus; and it is impossible to place the creditor where he would have stood. His debtor has since sworn out, and given up his property to other executions: and the other chances of making his debt are past, and cannot be recalled. On no principle, then, that my judgment can apprehend, can you relieve the plaintiff.
Judge Coalter.
The case, as I understand it, is this:
Sizer sued Walden in debt, in the Superior Court of Law for Spottsylvania county, and Dickitison became his appearance bail. Before the office judgment Court, he entered a recognizance of special bail before the Judge, of the Court, and received the recognizance from him, in order to *125 transmit it to the Clerk’s Office, according to law. He gave it to his son, a practising lawyer in the Court, with directions to file it, and have him discharged. He being obliged to go to another Court, which sat at the same time, delivered it to another attorney practising in the Superior Court, of Spottsylvania, who promised to file it, and have the appellant discharged from his responsibility, as appearance bail. The attorney was also particularly solicited by a letter from the son of the appellant, which he received during the Term of the Court, to file the recognizance, and set aside the office judgment, in his behalf, as to Walden; and soliciting his attention to some other business for him in the Court, as he could not attend. This, however, by accident and the pressure of other business, the attorney failed to do; so that the office judgment stood confirmed, as well against the appellant as appearance bail, as against Walden. At the next Term of that Court, an effort was made to have the recognizance entered nunc pro tunc, but no relief could be had there. Walden, it is proved, has ever since been amenable to, and ready to answer, the process of Ca. Sa. had one been issued. None, however, has been taken out, in this case; but in some other case, he has been taken and discharged, under the act, as an insolvent debtor. In short, it would seem, that unless the bail is to pay this debt, the creditor must have lost it, by the insolvency of his debtor, there being no proof that he could have made it out of him. On the contrary, he obtained his judgment as early as possible, and at least one Term earlier than he would have obtained it, had the recognizance been filed; as the office judgment would have been set aside as to both, and a plea put in for the defendant Walden. No Ca. Sa. was taken, either because it was considered that it would be unavailing, or that not doing so, would more effectually fix the bail, by depriving him of the proof that would have resulted therefrom, that the plaintiff at law was iñ as good, and in indeed a better, situation, than he could have been In, had the recognizance been filed.
*126 I throw out of the case the reason assigned in the bill, that the appellant had important business which drew him to Richmond, about the time of the office judgment Court; s0 that he did not attend in person to the business, (there being no proof of that fact,) and rest the case simply on his confiding the recognizance to a regular attorney in the Court, with the directions above stated, and his agreeing to attend to it, Sic.
Is it beyond the power of a Court of Equity to relieve against the accident which has occurred ?
It seems to me, that much of the reasoning to shew that the Court has not this power, goes to prove that the bail must, at all events, and under all circumstances, see that thp recognizance is filed, and the office judgment against-him set aside. We cannot, however, go this far, without over-ruling the case of Smith & Moreton v. Wallace, 1 Wash. 254. In this, as in that case, the party had duly entered into a recognizance of special bail, and thereby became entitled, instante?', to surrender his principal. This new slate of things, and these new rights, became vested in him under the law. 1 Rev. Code, 502. The question is, whether he has been deprived of these rights, in a way which it is beyond the power of a Court of Equity to relieve him against? Suppose he had taken his cepi corpust and delivered his principal, and given notice that by accident, not proceeding from his culpable neglect, the recognizance had not been returned.
It seems to me, that the case above cited ought to be supported. The policy of the law in admitting baiTis founded in humanity. No man can say to his debtor, “I will hand you over to the Judge, and you shall remain in prison, until you pay the uttermost farthing.” To prevent this, he is permitted to give appearance bail, who is entitled to enter himself special bail, and deliver his princpal in his exoneration. Such bail has never been considered, whether appea?'a?ice or special, as improperly interfering with the rights of the creditor. On the contrary, by the *127 practice of the British Courts, and by our Statutes pursuing that policy, many and important favors, contrary to the letter of his undertaking, are extended to the bail. This was in furtherance of the humanity of the law,, and to encourage men to prevent oppressive imprisonments. Thus the recognizance requires that the body shall be rendered to prison in execution ; so that when a Ca. 8a. is issued, the officer may levy it. If this is not done, the recognizance is forfeited; yet the Courts, in favour of the bail, permitted him to surrender the body afterwards. This equitable favor was not denied him, because, peradventure, the debtor may have been able to pay the debt, had he been taken or rendered in execution on the Ca. 8a. and therefore no compensation can be made; nor would the actual proof of such fact deprive the bail of this equitable favor, on his receiving notice by Scire Facias that the body had not been taken in execution. But, in the case under consideration, as well as in our case, the debtor could have been had in execution; but it was more important to the creditor, if possible, to fix the bail, that being his only chance to get his debt. For these and other reasons, which I forbear at present to mention, I think that case ought not now to be over-ruled. Was that a stronger case, or one in which there was so much more diligence and precaution in the Sheriff, who stood as bail, than in the appellant in this case, as materially to vary this case from that ? There a recognizance was entered into, but in a form, concerning which at least there were doubts. The clerk had refused to receive it at the Rules, and also in Court. This was known to the attorney of the Sheriff, and most probably, to the Sheriff himself, who being an officer of the Court, and whose business called him thither, would be likely to hear the orders read, and could more readily attend in person to the filing his recognizance, which he had been obliged to enter into in consequence of his default in not taking a bail bond. But, his attorney shewed the recognizance to the plaintiff’s attorney, who agreeing to make no- objections to the form, *128 it was handed to the clerk; but instead of moving to set asi^e the office judgment, nothing was said; and the clerk* not having heard that the objection was waived by the plain* tiff’s attorney, and having twice before refused to receive it, of course took no notice of it. In that case too, there was a plea put in on behalf of the Sheriff, and of course the cause continued on the docket, and a further opportunity to give bail afforded, even down to the time when this plea Was ultimately disposed of, and which could not have been disposed of, without the knowledge of the Sheriff or his' attorney; unless indeed, it was neglected by both. Yet this neglect of the attorney in not explaining the matter to the clerk, in the first instance, or moving the Court on the subject, at that or a subsequent Term, was not visited on the bail, who had entered into a legal recognizance; but which had thus failed of its legal effect. The Court say, “they are fully satisfied on the equity of this case. A more complete surprise can hardly be conceived. It would be strange, if an accident so mischievous as this in its effects, were beyond the reach of that Court, whose peculiar province it is, to grant relief in such cases. The negligence, with which the appellee is charged, is fully excused by the agreement of the counsel, and the mistake which followed.” The party had entered into a recognizance, not in the accustomed form, though in reality a good one. This was remedied by the agreement of the counsel, that it was in sufficient form. His negligence in not séeing if entered of record, was excused, though the mistake arose from the failure’of the attorney to make this agreement known to the clerk, in consequence of which, he, instead of settingaside the office judgment, put in a plea for the Sheriff, against whom the creditor finally obtained his judgment at law; and having done so, insisted that he had the law on his side, and equal equity. But, this argument did not prevail. In both cases, then, there was a legal recognizance entered into by ihe appearance bail, which, from mistake or accident, was not so acted upon as to produce its legal effect. If there *129 is any material difference in these cases, as to who was guilty of the most neglect, it seems to me that it was in that case. Suppose Dickinson had attended in Court, had given the recognizance to his attorney, had seen him go to the clerk’s table even, to have it filed; but the clerk being busy, or he interrupted by other business, had not done it at that moment, and then forgotten it; ought he to suffer? But this was substantially his case; nor was any plea put in for him, so as to delay the suit,-and give him further time to file the recognizance.
But it is said, that in this case, as the recognizance was placed in the hands of the appearance bail, it was his duty to see that it was so dealt by as to have its legal effect; but that also was done in the above case. In that case, it is true, it was handed to the clerk; but by him it was considered as waste paper, and not noticed in the record, so as to avail the plaintiff on a Scire Facias, any more than in this case. He, therefore, had not the chance, in that case, any more than in this, of fixing the party as special bail.
The recognizance being entered into before the Judge, it is made his duty, by the law, to transmit it to the clerk. Suppose he had kept it in his pocket, intending to return it in person, when he went to the Court,, but had mislaid or forgotten it; would the bail have been refused relief, because he did not attend at Court and see that it was filed and entered of record? There is nothing in the law imposing this duty on him. This was not held to be the law in the above case. Suppose the bail had informed the Judge, that his son was his attorney, who had promised to attend to the business for him, and desired him to deliver the recognizance to him, either before or at Court; and the Judge had taken this method of transmitting it to the clerk, but that by some mistake or accident, it had not been filed or entered of record, so as to give both parties the rights and remedies to which, by law, they would have' been entitled? Could this case have been distinguished, injuriously to the relief sought, from that above cited? I *130 think not. On the contrary, it seems to me, that if relief is refused in such case, it must be on the ground that the bail, at all events, must attend Court, and see that the recognizance is filed and legally proceeded in, or be ready to enter into another recognizance in Court. But, would not such a decision repeal the Act which enables bail who may not be able, or may not find it convenient to attend Court, to enter bail in the country ? Why is this privilege allowed him, if he must attend Court in person, (whether the recognizance is entrusted to him or not,) and see that special bail is given? - If he is to do this, be may as well enter bail in Court. How, too, could he take the body on the bail piece, and surrender it in his discharge before the office judgment Court, if that is not to avail, unless he, at all events, attends Court and sees the recognizance entered? He may be going out of the State, and unable to attend in person. If a transmission of a recognizance by a Judge, in the way above mentioned, or by any other safe messenger, would be a sufficient and legal discharge of his duty, whether it should fail or not, and would avail the bail, why shall not equal or greater precaution by the bail excuse him? It seems to me, if it does not, it must be, as above said, because he must, at all events, and in every case, see to its return ánd entry upon record.
It seems to me also, that this case cannot properly be likened to cases of contract, so as to make the decisions in the latter, applicable to it. There is no contract with the creditor, in consequence of which he parted with his property. The bail bond in its terms, is a contract with the Sheriff, who, on taking sufficient caution, is authorised to permit the debtor to go at large, instead of committing him to jail; indeed he is bound to receive such surety. If, on objection, the bail is adjudged insufficient, the Sheriff is liable at once, as if no bond had been taken. If the bail is not objected to, or is adjudged sufficient, instead of an assignment of this bond, and a suit on it, judgment is at once entered up against the bail, subject to be set aside *131 on his entering, or some one else entering himself as special bail. He does so, and is instanter entitled to deliver the principal. This is the nature of his undertaking; and many cases, as before stated, shew the indulgence and favor of the Courts to the bail, which no Court could extend to ordinary sureties on contracts. The bail is considered as the jailor of the debtor, and these favors were extended, in order to promote the humane intentions of the law. Thus we see, if the defendant dies before Ca. Sa. the bail is exonerated. So, if he is guilty of felony and to be transported, he may be brought up by habeas corpus, so as to discharge the bail, although he is sent instantly to Newgate, so that the plaintiff cannot have him in execution. 2 Stra. 1207. If he is sent out under the alien act, the bail is entitled to an exoneretur, because no neglect is imputable, and the bail ought not to suffer in consequence of a law passed for the benefit of the public. Merrick v. Vaucher, 6 Term. Rep. 50. All these instances of favor to the bail, and a great variety of.others which need not be noticed, surely go on the ground, that this undertaking is not to be considered in the nature of a contract between the bail and the creditor; but an undertaking sanctioned and encouraged by the law, for reasons of sound policy and humanity; and they equally go to prove, that it is no unjust or improper interference between the debtor and creditor. The cases in which Courts will not interfere, although an accident has occurred, unless compensation can be made, are cases of contracts. Here too, it is said, no compensation can be made, because we cannot say what -chance the creditor would have had to get his debt, had special bail been entered. He might .have got it on a Ca. Sa. or he had a chance to fix the bail, and we can make no calculation of what loss he may have sustained; and so the payment of the debt is the only safe standard, as we cannot place him in the same situation. It is true an accident has occurred without the fault of either, by which neither party can be placed in the situation they were'en *132 titled, but for it, to occupy. In one respect, however, the crec*itor has occupied, and does occupy, all the rights he would have had, if the recognizance had been duly filed. He bad it in his power, at the earliest possible time, to take his Ca. Sa. Suppose he had done so, and had taken the body. Of what could he, injustice, complain? He could not say, “ I have lost my chance of fixing the bail, which I might have had, if the recognizance had been filed.” He could only allege that injury, in case his Ca. Sa. had been returned ‘'not found” But from the allegations in the bill, and the proofs in this case, we are justified in considering it as one in which he had taken the body, as it is averred and appears, that he might at any time have done so. His debtor then was insolvent, and he could not get his debt out. of him. He could not have fixed the bail, as special bail, because his Ca. Sa. would have been executed. His only chance to fix the bail, arises from the accident, which has prevented his standing as special bail. This cannot be called a chance. The thing has occurred; and it depends, on this Court, whether this accident is to avail him.
But by this accident, the bail is deprived of his remedy of surrendering the body, which he would have had; and it is equally clear, that he could and would have done; whilst the appellee would only have had the remote possibility of fixing him on his failure to do so. The injury, therefore, to the bail, is much greater and more apparent, than to the creditor. Shall we oppose to this the mere possibility that he might have been fixed, and a debt, which he never contracted or contributed to contract, extorted from him, and which the appellee must have lost by an imprudent extension of a credit to an insolvent man, because of this accident? If we do, it must be, I think, because the decision of this Court, in the case above referred to, is wrong, and because accident is no ground for relief, in .such a case. The appellee can only complain, that he has, by our decision, been deprived of a benefit, which other *133 wise would have resulted to him from this accident. He has no claim which touches the conscience of the appellant, and by the admonitions of which, he ought to pay this debt. It is at most, a case of strict summum jus. Can he, in good conscience, avail himself of a mere accident, ' by which the bail has been deprived of his remedy to surrender the body, and which, in justice, was all he could be asked to do, and which has always been ready, so that,'in substance, the undertaking has been complied with ? And shall he expect a Court of Equity, which looks to substance, to uphold his mere legal advantage, bottomed on nothing but pure accident ? It seems to me, that he cannot be supported in such pretensions.
I think, therefore, that the decree ought to be reversed.
Judge Cabell concurred in opinion with Judge Carr, that the decree should be affirmed; which was accordingly done.

 Absent, the Phesieekt, and Judge Gheen who had acted on the case as Chancellor.