Broyles & Harry *v.* Bee *et als.*

Decided November 5, 1881.

*(Patton, Judge, absent.)

1. If a vendor does not affect to have a perfect title, and expressly sells such as he has without special warranty, he is entitled to specific execution without being first required to show a clear title.

---

*Submitted before he took his seat on the bench.

2. Where a vendee relies upon misrepresentations as inducing him to enter into the contract, he must satisfactorily show, not only that he relied upon such representations. but also that they were false.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Mercer, rendered on the 30th day of October, 1879, in a cause in said court then pending, wherein Washington Broyles and Calvin Harry were plaintiffs, and Isaiah Bee and others were defendants, allowed upon the petition of said Bee.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court :

*David E. Johnson and R. C. McClaugherty* for appellant relied upon the following authorities: 3 Cow. 518 ; 6 Johns. Chy. 111 ; 8 Leigh. 675, 676 ; 10 W. Va. 677 ; Rawle Cov. for Title 42, 565, and note 3 ; 2 Sug. on Vendors (8th Am. ed) 548, 549 ; 2 Min. Inst. 791, 792 ; Hill. on Vendors 208 *et seq.* ; *Id.* 354, note A. ; *Id.* 270 ; *Id.* 359 ; 6 Paige 407 ; 11 Minn. 356 ; 5 Seld. 536 ; 3 Clarke (Ia.) 360 ; 2 Story Eq. 693 ; 3 Rawle Cov. for Title 504 ; 2 Min. Inst. 811 ; *Id.* 791 ; 22 Gratt. 82 ; 6 Call 309 ; 14 Fla. 390 ; 22 Pick. 485 ; 9 Greenl. 128 ; 2 Lom. Dig. 79 ; Fry Spec. Perf. § 425 *et seq.* ; 1 Story Eq. Juris. § 779 ; 20 Ohio 453 ; Hill. on Vendors 273, 274 ; *Id.* 270 ; 4 L. Cas. in Eq. 1119 ; 2 Min. Inst. 792, 793 ; 2 Rand. 120 ; 3 Pars. on Cont. (Spec. Perf.) ; 1 Pet. 455 ; 19 Gratt. 571 ; 2 Sugd. on Vend. 314 ; *Id.* 362 ; 2 Story Eq. Juris. § 796 ; 11 W. Va. 158.

No appearance for appellees.

JOHNSON, PRESIDENT, announced the opinion of the Court :

In September, 1879, Broyles & Harry, the plaintiffs, filed a bill in equity in the circuit court of Mercer county, to compel the specific performance by Bee, the defendant, of a contract of purchase of a tract of land.   The title-bond executed to said Bee by the plaintiffs, and which was made an exhibit with the bill, provided as follows: "The said Broyles & Harry bind themselves to give said Bee possession of said

premises on or before the 1st day of March next. Now if the said Broyles & Harry shall make the said Bee all the right and title conveyed to them by the said John Harry of the county of Russell and State of Virginia, which deed is now of record in the clerk's office in the county court of Mercer and State of West Virginia, and warrant and defend said title against any claim, title or conveyance, that may have been given or made by them to said land, then this obligation to be void and of no effect, otherwise to remain in full force and virtue." In describing the land, the deed to the obligors from John Harry is referred to; and it is also said, that it was then occupied by Romulus Harry. The title-bond is dated January 9, 1872. The bill alleged, that the purchase-money had been paid except $156.00 with interest from the 9th day of January, 1872, which was shown by Bee's bond for that amount filed with the bill with credits on said bond of $10.00 paid January 26, 1874, and $50.00 paid May 11, 1874.

The defendant, Bee, filed his answer reciting the bond for the payment of the purchase-money claiming, that he was entitled to an abatement, on the ground that at the time the contract was made, the plaintiffs represented to him, that Mrs. John Harry, the wife of plaintiff's vendor, who was then living, had no claim for dower upon said land, that she had by contract with her husband relinquished her right of dower in said land; and relying upon that representation he had purchased the said land. The defendant says, that at the time of said purchase the said Caroline E. Harry, then the wife of said John Harry, plaintiff's vendor, had an inchoate right of dower in said land, which afterwards became vested by the death of said John Harry, and was subsequently assigned to her in a suit in equity by her against this defendant, and the value thereof fixed by the decree of the court at $19.05 per year during her life, from the 19th day of June, 1877, the date of the decree, and $31.05 the value up to that time, together with $75.49 costs; that he is unwilling to accept the deed for said land offered by plaintiffs, until they reimburse him for the amounts already paid by him on account of said dower-interest, and for any future sums he may have to pay on account thereof.

The defendant in his answer further says, he is "ad-

vised, that although the plaintiffs by their title-bond bound themselves to convey said land with special warranty only, yet the inchoate right of dower of the said Caroline E. Harry existing on said land, at the time he made said purchase, was a breach of covenant against incumbrances and was broken, the moment said contract was entered into. But whether this be true or not, he is further advised, that under the law, independent of any covenant, the contract being executory, this defendant cannot be compelled to take a conveyance of special warranty, until the incumbrances are removed, and this defendant having paid such incumbrances is entitled to have the amount thereof set off against any balance of purchase-money due therefor from him," &c.; and that anything due him for overpaid purchase-money should be decreed to be paid him by the plaintiffs.

Depositions were taken in the cause. The plaintiffs both swore, that Bee knew, that Mrs. Harry was living, and one of them, Broyles, told him, before the purchase was made, that there were writings said to be in the hands of Zachariah Witten concerning the division of property between John Harry and his wife; that he told him, that they would not be bound to warrant and defend any claim against it, because he did not know, what Mrs. Harry would do; and Dr. Bee told him, " he had examined the law on it, that he would run the risk, that it would not cost him over $35.00;" that " a short time after that the title-bond was drawn." He also said, " he considered a reduction was made in the price, because of the contingent right of dower of Mrs. Harry."

On cross-examination the witness weakens the effect of his evidence by saying, that " if Mrs. Harry had not been entitled to dower, he would have held the land worth something near $1,400.00," instead of $700.00, the price at which it was sold. On further cross-examination he said, that it was some days before the bond was executed, that Dr. Bee said " he would take the risk;" that at the time the land was sold, he believed Mrs. Harry had an agreement with her husband, by which she had relinquished her right of dower in the land; and that he told Dr. Bee, that he understood, that said writings were in the hand of Zachariah Witten.

Calvin Harry the other plaintiff said in his deposition,

that at Dr. Bee's house he told Dr. Bee, " that this writing and agreement had been made between John Harry and Caroline Harry, and that the writing had been lost, and the witnesses some of them were in the West, and some here. I told him, that if we sold the land, we wouldn't be bound hereafter for any claim ; that we would make him such deed as was invested in us." On cross-examination he said he was not present when the bond was executed ; that the conversation with Dr. Bee was not very long before the bond was executed ; it might have been two or three weeks before.   In answer to the question :  " Did you not believe, at the time you contracted this land to Bee, that Mrs. Harry had relinquished her dower-interest therein by an agreement with her husband, and did you not so represent to said Bee ?"   He said : " I believed, that they made such a contract.   We told Dr. Bee that such a contract had been made."   On re-examination he says, he told Dr. Bee, that while that was his belief, he would not be responsible for any claim Mrs. Harry might have on account of her dower, and that he (defendant Bee) must run the risk.

The defendant, Bee, says:  " My understanding was, that they (Harry and Broyles) were to warrant the title generally, till I commenced writing the bond, when Mr. Broyles said they wanted only to warrant specially.   I asked him, if there were any other claimants to the land, he said not ; that it was one of the oldest surveys in the neigborhood.   I then asked him, if old Mrs. Harry was living.   He told me that she was, but that at the time they, John Harry and wife, separated, they made a division of property, and that she had released this land, and that this contract was reduced to writing, and that this writing was in the hands of Zachariah Witten of Tazewell county, Virginia."   He then goes on to specify the loss, that he had sustained by the assignment of dower in the land to Mrs. Harry.   He also states the loss, that he had sustained by not receiving possession of the land, when according to the bond he should have received it, and says that loss amounted to $40.00.   He further says, that had it been represented to him, that Mrs. Harry had a dower-interest in the land he would not have purchased it at any price.   He also testifies, that in addition to the credits set out in the bill, he was en-

titled to a credit of $30.00 with interest thereon for about five years, which sum he had paid to Mahood for the plaintiffs at their request.

He admits on cross examination, that plaintiffs had a conversation with him about the dower-claim, before the time the contract was executed, in which Broyles told him, that the agreement releasing the dower had been made and placed in Witten's hands, and that the existence of such an agreement could be proved, and that he gave him the names of witnesses, among whom were William Shannon, Henry Schrader and one or two more in the West. When asked if he did not in the last named conversation inform one or both the plaintiffs, that he would take the land at the price, and run the risk of the widow's dower, he said : " I do not remember telling them so, for upon the representation of Mr. Broyles I did not suppose there was any risk." To the question, whether he did not afterwards in the street of Princeton, and before the bond was signed, say to the plaintiff Broyles, that he had examined the law, and that the widow could not recover more than $35.00, and that he was willing to risk it, he answered : " I do not remember telling any one, that the widow's interest would not amount to more than $35.00, and I placed so much reliance in Mr. Broyles's statement, that when I sold the land, I made general warranty deeds to all that I have conveyed. I sold within a year or two after the purchase, and if at any time I had any conversation about the widow's dower, it was after I had heard, that Mr. Harry was dead, and I would be sued by Mrs. Harry." He also said, since the representations have been made by plaintiffs : " Mrs. Harry had claimed her dower and received it ; it being impossible to prove that any such agreement was or ever had been in existence."

The only other witness, whose deposition was taken in the case, was Isaac D. Martin, who substantially states the same representations made by Broyles, when the bond was executed, as stated by defendant Bee. In answer to the question, whether Bee did not say he would take the risk in regard to Mrs. Harry's claim of dower, Martin said : " If he did, I have no recollection of it. I don't think there was any such conversation between them."

There is no evidence, that Bee was put in possession at the time designated in the bond; nor that he had not lost $40.00 by being kept out of the possession. There is nothing in the record of this cause from the record in the suit for dower except the bill, the answer of the defendant Bee and the decree in the cause, which decree shows, that it was heard among other things "upon the depositions of witnesses;" but it nowhere appears, what "witnesses" were examined, or whether there was any effort to take the deposition of Zachariah Witten or the other witnesses referred to by the plaintiffs, as set out in Bee's deposition in this cause.

On the 30th day of October, 1879, the court decreed, that Bee should pay to the plaintiffs the balance of the purchase-money due, and ascertained that sum to be $116.62, the amount of the last bond, subject to the credits thereon heretofore stated and the $30.00 note to Mahood with interest, and appointed a commissioner to sell the lands for the payment thereof, unless said Bee or some one for him should pay the same in thirty days.

From this decree the defendant Bee appealed.

The counsel for appellant insist, that Bee is not bound to accept a special warranty-deed and pay the whole of the purchase-money, in the face of the dower assigned to the widow of the vendor of the plaintiffs. It is true, as they claim, that a contract to sell a fee simple estate implies in the absence of an express stipulation to the contrary, that the estate is unincumbered, and that the vendor has good title, and that there are no incumbrances on the land, that may in any manner embarrass the purchaser in the full and quiet enjoyment of his purchase. *Christian* v. *Cabbell et al.*, 22 Gratt. 82; *Garland* v. *Macon*, 6 Call 309. But if the vendor does not affect to have a perfect title, and expressly sells such as he has with special warranty, he is entitled to specific execution without being first required to show a clear title. *Bailey* v. *James*, 11 Gratt. 468; *Goddin* v. *Vaughan*, 14 Gratt. 124; *Vail* v. *Nelson*, 4 Rand. 124; *Sutton* v. *Sutton*, 7 Gratt. 204.

In this cause it is clear, that the title-bond provided only for a special warranty-deed. The liability of the grantors then was expressly limited; and if the purchase was made without fraud or mistake, the defendant is not entitled to an

abatement on account of the dower of Mrs. Harry. The defendant had the right to insist, as in this cause it appears he did, upon an abatement of a part of the purchase-money, on the ground that through fraudulent misrepresentations he was induced to enter into the contract. If he had proved the fraudulent misrepresentations, he might have been relieved from the performance of the contract entirely and might have recovered back his purchase-money which he had paid; but he elected, as it was his right to do, to have the contract performed, as far as the plaintiffs could perform it, and claimed an abatement. *Goddin* v. *Vaughan,* 14 Gratt. 104; *Pollard* v. *Rogers,* 4 Call 239.

Was there any such misrepresentations made to the defendant by the plaintiffs or either of them, as induced him to enter into the contract and take a bond for a special warranty of title ? Taking the whole evidence together, it seems to me, that Bee did not wholly rely upon the representations made as to the relinquishment of dower by Mrs. Harry. I think he was put on his guard. They undoubtedly told him, that they had understood, that an agreement had been made between Harry and his wife to that effect, and where they understood the agreement was placed ; but at the same time they refused to give a bond binding themselves to make a conveyance with general warranty. Some time before the bond was executed, they had a conversation with Bee on the subject; and he might have enquired into the truth of the matter. Indeed it does not appear, that such a writing was not entered into between Harry and wife ; and we cannot tell, what efforts were made to prove it in the suit for dower. It does not appear, whether Zachariah Witten's deposition was taken in that suit or not. Witten was the man, in whose hands the said contract was supposed to have been placed. Neither does it appear, whether the depositions of any of the witnesses, whose names, Bee says, were furnished him by Broyles as being able to show the existence of such a contract, were taken in the dower-suit. So it does not appear, that the representations were false, if made, as Bee claims they were. Under these circumstances we cannot hold, that Bee is entitled to any abatement of purchase-money on account of the dower of Mrs. Harry.

But we think the court erred in not giving Bee credit for the $40.00, he proves he suffered in damages by not obtaining possession of the property, when it was the duty of the plaintiffs to put him in possession. He sets up in his answer, that he did not obtain the possession of the property for some time after it should have been given him; and he proves, that he was thus kept out of possession; and proves by his own uncontradicted evidence, that he was by reason of such failure to be placed in possession of said property damaged to the amount of $40.00.

The decree of the circuit court of Mercer county rendered on the 30th day of October, 1879, must be reversed with costs; (*Defarges* v. *Lipscomb*, 2 Munf. 451; *Ashby* v. *Kiger*, 3 Rand. 165) and this cause must be remanded to the circuit court of Mercer county with instructions to allow the credit of $40.00, as of the 1st of March, 1872, in addition to the credits already allowed by said court, and to enter a decree for the sale of said property to pay the balance of the purchase-money, unless the defendant, Bee, shall pay it in a reasonable time to be fixed by the court, and to proceed with the cause according to the principles herein set forth, and further according to equity.

JUDGE GREEN CONCURRED IN THIS OPINION.

HAYMOND, JUDGE, concurred in the opinion and syllabus, but was of opinion, that the decree of the circuit court should not be reversed with costs, but corrected here and affirmed.

DECREE REVERSED.    CAUSE REMANDED.