FOURTH PRESBYTERIAN CHURCH, Thirty-fourth Street, Plaintiff, *v.* DAVID STEINER, Defendant.

*Covenants in a deed, not enforcible in equity, justify the allowance of damages at law — unmarketable title.*

It does not necessarily follow from the fact that the performance of certain covenants contained in a deed will not be enforced or their violation restrained by a court of equity, that the damages resulting from their violation cannot be recovered at law.

Whether certain covenants contained in a deed constituted such an incumbrance on the title of the property in such deed described as to render it unmarketable, considered.

SUBMISSION of a controversy on an agreed statement of facts, under section 1279 of the Code of Civil Procedure.

On the 29th of April, 1865, Jane Aycrigg was the owner in fee simple of four contiguous lots situate on the south side of Thirty-fourth street, every one of which has a frontage of twenty-five feet on said street, and a depth of ninety-eight feet and nine inches. By a deed dated April 29, 1865, acknowledged May 1 and duly recorded May 2, 1865, she conveyed these lots to George W. Campbell. This deed was executed by the grantor and grantee, and contained the following covenants:

" And the said party of the second part, for himself, his heirs, executors, administrators and assigns, as a condition of these presents, doth covenant, grant and agree to and with the said party of the first part, his * heirs and assigns, that whenever the hereinbefore-described premises, or any part thereof, shall be improved, the same shall be improved with good and substantial dwelling houses, constructed of brick or stone, with fire-proof roof to each house, not inferior in height and style, quality and external appearance to the house known by the street number 108 West Thirty-fourth street, now or formerly belonging to William R. Stewart, and that the whole front of the said premises shall be covered with such dwelling houses (not exceeding five houses) of an equal width of not less than 20 feet each, and without any alley or passageway within the said walls thereof to communicate from the street to the yard, other than the halls or entries of such houses ; but instead of such dwelling houses there may be erected upon the said four lots of ground, at any time prior to the 6th day of December, 1867, a good substantial Presbyterian church edifice, having a front of freestone or marble, and suitable to that part of the city in style and character.

" And the party of the second part, for himself, his heirs, executors, administrators and assigns, as a further condition of these presents, doth covenant, grant and agree to and with the party of the first part, her heirs and assigns, that neither the party of the second part, nor his heirs or assigns, shall or will erect, or suffer to be erected, on the said premises, or any part thereof, any stable, or will permit or suffer said premises, or any building which may at any time be erected thereon, to be used for any kind of trade, manufactory or business whatsoever, or for a tenement or community house.

" And the said party of the second part, for himself, his heirs, executors, administrators and assigns, doth covenant and agree with the said party of the first part and her heirs that in case the party of the second part, his heirs or assigns, or any or either of them, shall make default in the performance of the above-written covenants on his or their part to be observed, or any or either of them, or any part of either of them, then and in such case the party or parties so making default shall pay to the party of the first part or her heirs

* Sic.

the sum of two thousand dollars ($2,000) as liquidated damages in the premises for each one of the said lots on or as to which such default or breach of covenant shall have been made or occurred."

By a deed dated March 1, 1865, acknowledged May 1 and duly recorded May 2, 1865, George W. Campbell conveyed the lots to the Grand Street Presbyterian Church, " subject to, and it is understood and agreed by the parties of the second part, to and with the party of the first part and his legal representatives, by the acceptance of these presents, this is made upon the express condition that the parties of the second part, their successors and assigns, do hereby assume to perform each and every of the covenants as the part of said Campbell set forth in a certain deed of said premises from Jane Aycrigg to said Campbell, bearing date the 29th day of April, 1865, to the purposes and with the same force and intent as if each of said covenants were specifically set forth in these covenants, and as if the parties of the second part had received the covenants direct from said Jane Aycrigg instead of said Campbell, and had covenants directly with said Jane Aycrigg to the same effect as the said Campbell had done in the deed to him aforesaid."

Subsequently the name of the corporation was duly changed to " Fourth Presbyterian Church, Thirty-fourth street."

Jane Aycrigg in her lifetime owned other lots near to said four lots, part of which she conveyed to various grantees by deeds containing similar restrictions, and she died seized of other lots in that neighborhood which she devised by her will.

December 28, 1892, the parties to this submission entered into a written executory contract by which the Fourth Presbyterian Church, Thirty-fourth street, agreed to sell and convey in fee simple, and David Steiner to purchase, a part of the four lots, eighty feet in width on the street by ninety-eight feet and nine inches in depth. The vendee refused to take the title because of the restrictive covenant herein set forth unless the vendor would abate $2,000 per lot from the purchase price. In addition to the foregoing facts, the submission contained the following facts agreed on :

" IX. The locality wherein the said premises are situated and located, and the immediate neighborhood of said premises, was, at the date of the deed, devoted and dedicated to residences of a high class and expensive nature, and no buildings for trade purposes

whatsoever, or for tenement and community houses, were situated therein.

" X. That in furtherance of an intention and purpose to restrict the said neighborhood locality, and limit, restrict and circumscribe the use of said property so conveyed as aforesaid, the said covenant was put in said agreements and deeds to maintain and preserve the said neighborhood free from, and unoccupied by, all buildings devoted to, used for or intended to be used for trade purposes, or used and occupied, or intended to be used or occupied, for tenement or community houses.

" XI. That for a long number of years, to wit, until about 1892, the said premises in question were restricted and limited in the use thereof to church property, and the immediate neighborhood restricted to high class residences and dwelling houses.

" XII. That thereafter, and since about the year 1892, the said neighborhood has deteriorated as a first-class neighborhood for dwelling houses and residences, and the premises in question become unfit for use as church property, and the houses in and about said locality and neighborhood have become occupied for business and trade purposes and by theaters, music halls and places of amusement, and the dwellings and residences become devoted to and occupied for trade, commercial and business purposes, and has become totally unfit for the use to which the said neighborhood was limited and restricted by the said covenants in said agreements and deeds contained.

" XIII. That for many years last past there have been great and extensive changes in the character and location of said premises and of the premises mentioned in the said agreements and deeds, and in the surroundings and nature thereof, and in the uses of the said premises and contiguous property, and in the business of the vicinage, rendering it injurious, inequitable and inexpedient to observe, enforce and maintain the said covenants limiting and restricting the use of said premises.

" XIV. That to enforce and uphold the said covenant in preventing the use of said premises for present purposes, according to the change wrought by the growth of the city, would be to inflict great and irreparable injury upon the owners thereof, and prevent the same from being put to practical and reasonable use and enjoyment thereof

under the conditions now existing in the neighborhood in which said property is located.

" XV. That the change in the neighborhood so wrought and at present existing was impossible to be foreseen by the original owner thereof in the year 1865, when the covenant restricting and limiting the use thereof was made."

Upon these facts the following question is submitted for determination :

" Whether or not the said covenants constitute an incumbrance or cloud upon the title of the church, rendering it unmarketable for general purposes."

*Delos McCurdy*, for the plaintiff.

*Emanuel J. Myers*, for the defendant.

Follett, J. :

Assuming that the statements contained in the submission are true, and that all of the facts relevant to the question submitted are contained therein, it is clear that the case falls within the principle laid down in the class of cases of which *The Trustees of Columbia College* v. *Thacher* (87 N. Y. 311) is a type, and that the performance of the covenants would not be enforced or their violation restrained by a court of equity; nevertheless, the damages sustained by the violation of the covenants might be recovered at law by the owners of the adjoining lots, to which this negative easement created by the covenant has attached. We assume from the submission, though it is not expressly stated, that there are many lots to which the easement is attached. In case an action should be brought by a lot owner to restrain the violation of the covenants and recover damages for their violation, and the facts should be found as stated in the submission and no others, equitable relief would be refused and the damages awarded would be nominal. However, whoever owns the lot in question will be exposed to actions by the owners of the adjacent lots either for the purpose of enforcing the performance of the covenants restraining their violation or for damages. This is not the kind of title that a purchaser under this contract is entitled to receive. It is suggested that there be deducted from the contract price $2,000 per lot, and that the vendor be com-

pelled to convey on those terms. The covenant, while it liquidates the damages as between Mrs. Aycrigg, her heirs and representatives, and the owner of the lot in question, does not assume to liquidate the damages which may be sustained by the owners of neighboring lots who are entitled to the benefit of the covenant. The covenants contained in the deed constitute such an incumbrance upon the title that the defendant should not be compelled to perform his contract, and is entitled to recover the sum which he has paid on the contract, with interest.

A judgment should be entered accordingly in his favor and against the plaintiff, with costs.

O'BRIEN and PARKER, JJ., concurred.

Judgment ordered in favor of defendant and against the plaintiff, with costs.