NOAH CHESMAN & another, executors, *vs.* JOHN CUMMINGS & another.

Suffolk. March 19. — May 12, 1886. MORTON, C. J., did not sit.
W. ALLEN & HOLMES, JJ., absent.

The doctrine that a court of equity will not, by a decree for specific performance, compel a party to accept a title to land which is so doubtful that it may be exposed to litigation, does not apply when no question of fact is involved, and all parties in interest are before the court.

A., by his will, provided that the executors thereof were to have full charge of his real estate, to lease the same and collect the rents, and, as soon as convenient and profitable, to sell and convey the same to any purchaser or purchasers, at public or private sale, without any order of court or license; with the power to "turn over and convey any part or parts of the same in discharge of any devises or bequests herein, . . . . all as in their judgment may appear best." Afterwards A. executed a deed, by which he conveyed his real estate to three trustees, to have and to hold to them, "and their heirs and assigns forever, in trust nevertheless for the said A., with full power and authority to said trustees to manage said real estate as they may deem best, to lease, let, to sell and convey the same, or any part thereof, at public or private sale, and to execute and deliver a deed or deeds of the same." Subsequently, the testator made a codicil to his will, bestowing an additional legacy, and in all other respects confirming his will. After A.'s death, the trustees named in the deed conveyed the real estate to the executors of his will, "executors as aforesaid, their heirs, successors, and assigns, for their use and behoof forever." The executors made a contract with a person for the sale of a parcel of the real estate, and executed to him a quitclaim deed of the same, "by virtue of the power conferred upon us by said will, and of every other power us thereto enabling," which he refused to accept. *Held*, that the executors had power to convey a good title to the land, and could maintain a bill in equity for specific performance of the contract.

BILL IN EQUITY, filed November 11, 1885, by the executors of the will of William Perry, against John Cummings, to enforce specific performance by the defendant of an agreement in writing for the purchase of a parcel of land in Brockton. By an amendment to the bill, William Perry, the sole heir at law and next of kin of the testator, was made a party defendant. Hearing before *Devens*, J., who reserved for the consideration of the full court the following case:

The testator died on May 29, 1884, leaving a will, dated January 18, 1883, which was duly proved and allowed, of which the plaintiffs were appointed executors, and which, after giving certain legacies, provided as follows: " I direct and authorize the executors of my will to have full charge of all my real estate, to

lease the same and collect the rents, and, as soon as convenient and profitable, to sell and convey the same to any purchaser or purchasers, at public or private sale, without any order of any court or license therefrom; or they may turn over or convey any part or parts of the same in discharge of any devises or bequests herein, on consent of such devisee or devisees, all as in their judgment may appear best."

On May 13, 1884, the testator conveyed several parcels of real estate, of which that which is the subject of this suit was one, to three persons, to have and to hold to them, " and their heirs and assigns forever, in trust nevertheless for the said Perry, with full power and authority to said trustees to manage said real estate as they may deem best, to lease, let, to sell and convey the same, or any part thereof, at public or private sale, and to execute and deliver a deed or deeds of the same."

On May 14, 1884, the testator executed the following codicil:

" I William Perry of Brockton in the county of Plymouth and Commonwealth of Massachusetts do make this my codicil to my last will dated the eighteenth of January, A. D. 1883.

" I do hereby give and bequeath to Mrs. Ann Elizabeth Barrell of West Bridgewater in said county the sum of one thousand dollars. In all other respects I hereby confirm said will."

On November 18, 1884, the persons named as trustees in the testator's conveyance to them of May 13, 1884, by a quitclaim deed, which recited that " whereas the said William Perry has died, and the said trust created by said deed has terminated," conveyed said real estate to the plaintiffs, " executors as aforesaid, their heirs, successors, and assigns, for their use and behoof forever."

On October 21, 1885, the plaintiffs, as executors of Perry's will, and the defendant Cummings entered into an agreement in writing, by which the plaintiffs agreed to sell and convey to him, upon the payment by him of $500, a certain parcel of land in Brockton, " such conveyance to be made by deed without any covenants by " the plaintiffs " except for their own acts; " and he agreed to accept the deed, within ten days from the date of the agreement, " provided a good title to the land be thereby conveyed free from all incumbrances," and to pay the executors therefor the sum above named.

On October 27, 1885, the plaintiffs, as executors of the will of Perry, " by virtue of the power conferred upon us by said will, and of every other power us thereto enabling," executed a quitclaim deed of the land named in said agreement, covenanting " that the premises are free from all incumbrances made or suffered by us," and tendered the same to Cummings and demanded payment of said $500 of him. Cummings refused to accept the deed or pay the price therefor.

*J. H. Young,* (*A. S. Wheeler* with him,) for the plaintiffs.

*W. H. Wade,* for the defendant Cummings.

DEVENS, J. It has been heretofore held, in proceedings to enforce specific performance of a contract for the purchase of real estate, that a purchaser will not be required to accept any title which is doubtful, or which, even if apparently good, may possibly be defeated by facts and circumstances the existence of which cannot be accurately determined. *Jeffries* v. *Jeffries,* 117 Mass. 184. It was therefore decided in *Noyes* v. *Johnson,* 139 Mass. 436, that a person was not bound to accept a title by adverse possession, depending upon a long and difficult investigation of facts.

A title however, cannot be considered doubtful when there can be no question of fact involved in a decision as to its validity, but one of law only, upon which the court where the controversy is litigated is competent finally to pass.

It is unnecessary to consider the question whether, when only the vendor and vendee are before the court, and there are other persons interested in the title, or who may be thus interested, who will not be bound by the decree, it is the duty of the court to determine, as between the parties before the court, whether or not the title is good, and to enforce or refuse to enforce specific performance accordingly. The later cases in England have indicated a disposition to change what has heretofore been recognized as the rule, whether wisely or not may be doubted, and to hold that, even as between vendor and purchaser in such case, as a general and almost universal rule, the court is bound " to ascertain and determine, as it best may, what the law is, and to take that to be the law which it has so ascertained and determined." *Alexander* v. *Mills,* L. R. 6 Ch. 124. *Osborne* v. *Rowlett,* 13 Ch. D. 774. *Forster* v. *Abraham,* L. R. 17 Eq. 351.

It has always been held that, where all parties are before the court, so that a decision will have the force and effect of an adjudication in a direct proceeding for the purpose, and thus be an end of controversy on the subject, the validity of a title which depends upon a principle of law is to be finally decided. It is then to be determined to be either good or bad, and thus that the purchaser is either bound to take it, or may refuse it. As by that decision all parties will be concluded, such a title cannot be doubtful. Fry on Spec. Perf. (3d Am. ed.) § 862. *Sohier* v. *Williams*, 1 Curtis C. C. 479. *Butts* v. *Andrews*, 136 Mass. 221. *Cornell* v. *Andrews*, 8 Stew. (N. J.) 7; 9 Stew. 321. *Gill* v. *Wells*, 59 Md. 492. *People* v. *Stock Brokers Building Co.* 92 N. Y. 98.

In the case at bar, the heir at law having been brought into court by the amendment of the bill, all parties in interest are before us, and we therefore proceed to pass upon the question of title.

The difficulty in regard to it arises from the execution and delivery of the deed of trust by the testator after the making of his will. This deed conveyed his real estate, including the lot of land here in question, to three trustees, to have and to hold to them " and their heirs and assigns forever, in trust nevertheless for the said Perry, with full power and authority to said trustees to manage said real estate as they may deem best, to lease, let, to sell and convey the same, or any part thereof, at public or private sale, and to execute and deliver a deed or deeds of the same."

After the execution of this deed, the testator made a codicil bestowing an additional legacy, and in all other respects confirming his will, so that he cannot have intended that the deed should operate as a revocation thereof. The trustees under this deed, upon the decease of Perry, deeming that the trust created thereby was terminated by the death of the testator, conveyed the real estate to the executors of his will, "their heirs, successors, and assigns, for their use and behoof forever." The plaintiffs, as executors, having made a contract with Cummings for the sale of the parcel of land named in the bill of complaint, have tendered to him a deed in the ordinary form, "by virtue of the power conferred upon us by said will, and of

every other power us thereto enabling," which Cummings has refused to accept.

He contends that it is impossible to determine, from the words in the deed creating the trust, the extent of the estate vested in the trustees, or of that vested in the *cestui que trust*, the testator, and he suggests only two possible constructions of this instrument: that it may be construed to vest the legal fee of the testator's real estate in the trustees, and the equitable fee thereof in the testator; or to vest only an equitable life estate in the testator, and therefore only a legal estate for the life of the testator in his trustees, which would terminate by his death, so that the entire legal and equitable estates would thereupon vest in the heir at law.

Assuming the former of these constructions to be correct, the argument concedes that the grantor had the right and power at any time to terminate the trust by demanding and receiving from the trustees a reconveyance to himself of the legal title; that, although the trustees had the legal fee vested in them, the whole beneficial interest and equitable title were in the *cestui que trust*, who might dispose by deed or will of the equitable fee as he saw fit. Pub. Sts. *c.* 127, §§ 1, 24. *Loring* v. *Eliot*, 16 Gray, 568. *Smith* v. *Harrington*, 4 Allen, 566, 569. As the testator died without having in his lifetime put an end to the trust created by the trust deed, Cummings further contends that there was a resulting trust of the equitable fee of his real estate to his heir at law, and that the trustees, holding then only a dry trust title, were bound to convey to him. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17, 21. *Packard* v. *Marshall*, 138 Mass. 301. Admitting this to be the law where there has been no disposition of the estate by devise, it is equally the duty of the trustees to convey to the devisees where there has been such disposition; and the will must, by necessary implication, be construed as constituting a devise to the executors. If they had received no more than a naked power to sell the real estate, this would not be inconsistent with its descent to the heir. There may be a charge of this nature on the real property in favor of the executor, without implying any estate in him therein. But the will contemplates complete control over the real estate by the executors. They are to have full charge of it, to lease the same

and collect the rents, and, as soon as convenient and profitable, to sell and convey the same to any purchaser or purchasers, at public or private sale, without any order of court or license; "or they may turn over and convey any part or parts of the same in discharge of any devises or bequests herein," &c., "all as in their judgment may appear best." The duties imposed upon the executors could not be discharged, unless the reversion in the real estate is treated as devised to them; and, by necessary implication, the title thereto passes to them. *Walker* v. *Whiting*, 23 Pick. 313, 317. *Greenough* v. *Welles*, 10 Cush. 571, 577. *Cleveland* v. *Hallett*, 6 Cush. 403, 407. It was therefore the duty of the trustees to convey in fee to the executors the real estate held by them, their trust having been completed; and, by the execution of the power vested in the executors by Perry's will, they could make a good title to Cummings.

If it be held that the trust deed vested an equitable life estate in Perry, the same result follows. There was then a resulting trust in his favor in the reversion. *McElroy* v. *McElroy*, 113 Mass. 509. This reversion, although to take effect only upon his own death, was still an estate vested in him during life, and disposable by will or deed. It passed therefore by the devise to his executors. If it be said, as Cummings does say, that, upon this construction, the trustees took only a legal fee for the life of the testator, and that their estate would terminate by his death, so that the entire legal and equitable interests would, by operation of law, thereupon vest in the heir, this has been prevented by the devise made. Even if the conveyance made by the trustees to the executors was ineffectual, by reason of having no estate to operate upon, it would be superfluous only, and in no way affect their title by virtue of the devise.

Cummings further suggests that the vagueness and obscurity of the terms of the deed of trust give rise to doubt and suspicion as to the purposes and objects for which the trust was created, and as to whether those purposes and objects have been fully attained; and that ulterior purposes and objects for which the trust was created may still exist. But when nothing is shown as to any other trust than that which appears on the face of the deed, when the instruments in writing which affect this estate are before us for construction, when all parties who can

be known to be possibly affected by the decree appear, we cannot refuse to determine the validity of the title because of imaginary doubts whether there was not, under the deed, the possibility of some ulterior undisclosed trust.

*Decree for the plaintiffs.*