# CHARLESTON.

## SPENCER v. SANDUSKY.

Submitted January 31, 1899—Decided April 22, 1899.

1. VENDOR AND VENDEE—*Purchase of Land—Contract—Misrepresentations—Rescission—Equity.*

    If a vendor, to secure a good bargain, knowingly conceals or misrepresents defects or incumbrances on his title to a tract of land, and thereby induces the vendee to enter into a written contract for the purchase of such land, on the application of such vendee, promptly made on the discovery of such defects or incumbrances, a court of equity will rescind such contract. (p. 587.)

2. VENDOR AND VENDEE—*Misrepresentations—Specific Performance of Contract.*

    A vendor who knowingly conceals or misrepresents the state of his title, as to defects therein or incumbrances against the same, will not be granted specific performance of his contract, even though, after suit brought, such defects are cured and such incumbrances removed, if at the time of the hearing the vendee objects thereto, and asks to be relieved from such contract. (p. 586).

3. VENDOR AND VENDEE—*Purchase of Land—Acceptance of Title—Clouded Title.*

    A vendee for value, purchasing a good title cannot be compelled to accept a litigious or clouded title, if there is reasonable ground to apprehend litigation with regard thereto, although the same may be satisfactory to a lawyer or speculator. Having paid a good price therefor, the vendee has the right to demand a quiet title. (p. 587.)

Appeal from Circuit Court, Harrison County.

Suit by Moses W. Spencer against J. B. Sandusky. Judgment for defendant, and plaintiff appeals.

*Reversed.*

LEWIS C. LAWSON, for appellant.

JOHN BASSELL, W. SCOTT, and C. W. LYNCH, for appellee.

DENT, PRESIDENT:

On the 9th day of December, 1897, James B. Sandusky and Moses W. Spencer executed a written agreement of sale and purchase of a certain tract of land lying in Har-

rison County, W. Va. By this agreement Spencer was to pay six thousand eight hundred dollars,—one hundred dollars in cash, four thousand dollars on the 1st of January, 1898, eight hundred and fifty dollars on the 1st of January, 1899, eight hundred and fifty dollars on the 1st of January, 1900,—and for which deferred payments Spencer executed his notes. Sandusky represented to Spencer that the only lien on the land was a deed of trust controlled by himself, amounting to about five thousand dollars, and that the first purchase money due should be applied to extinguish that,—otherwise he had a good title,—and that upon payment of the purchase money he would convey him the land by deed of general warranty. At the time the four thousand dollars became due, Spencer had the records examined, and found numerous judgment liens against Sandusky, which were incumbrances on the land. He thereupon refused to complete his purchase, and demanded a rescission of the contract. Sandusky, refused to rescind, and insisted on compliance. Thereupon Spencer filed his bill for rescission, setting up the misrepresentation and concealment of Sandusky as to the condition of the title, and alleged that in addition to the trust lien the record showed the following liens against the land (Sandusky purchased the land from James A. Coplin): A judgment in favor of William M. Late, dated November 7, 1887, for two hundred and fifteen dollars; another judgment, dated August 8, 1887, for thirty-one dollars and eighteen cents; another judgment, in favor of Nathan Goff, for two thousand five hundred and twenty dollars; a decree in favor of William H. Kester for eight hundred and two dollars and ninety-nine cents, dated May 28, 1897, and, of same date, a decree in favor of Hattie Kester for eight hundred and seven dollars and forty-six cents; a decree in favor of Cecil M. Kester for eight hundred and six dollars and ten cents; a decree in favor of Sada B. Kester for eight hundred and five dollars and ninety-nine cents; a judgment in favor of Nathan Goff for five thousand eight hundred and fourteen dollars, dated June 3, 1897; a judgment in favor of James McDermott for five hundred and ten dollars and twenty-seven cents; a judgment in favor of Otto D. Barnes for three hundred and ninety-nine dollars and thirty-six cents; a judgment in favor of J. C. Preston for ninety dollars; a decree in favor of Celia M.

Kester for three hundred and sixty-five dollars; a judgment in favor of O. D. Barnes for three hundred and nine dollars and eight cents; a judgment in favor of James B. Suples for five hundred and ten dollars and twenty-four cents; a judgment in favor of Supler & Reed for five hundred and thirty-three dollars and eighty-five cents,—all of which judgments and decrees were alleged to be liens against the land in controversy. Also, a deed of trust to Silas Langfitt for the sum of seven thousand dollars was alleged to be a lien on a portion of the land; that there were numerous executions and tax receipts in the hands of the sheriff, which had been levied on all Sandusky's property; that Sandusky was insolvent; and that plaintiff knew nothing of his condition prior to his purchase, but relied solely on his representations. Sandusky answered the bill, admitting the various judgments and liens, but claiming that some were paid off, and that he had and would secure releases for them as far as he was able. He filed releases of certain of the judgments on this land, conditioned on the application of the purchase money on the liens according to their priorities. He further alleged that, while he was not insolvent, he had executed a general assignment of all his lands, including the land in controversy, or the purchase money from the sale thereof, if allowed to stand, to Samuel S. Faris, trustee for the benefit of all his creditors, not because he was insolvent, but to prevent a sacrifice of his property, which was more than amply sufficient to pay all his debts; and he prayed specific execution of the contract. The depositions of numerous witnesses were taken, and many exhibits relating to the title were filed, and on a final hearing the circuit court entered a decree enforcing specific performance, and requiring Spencer to pay the purchase money, part in satisfaction of the deed of trust, and the residue to Samuel S. Faris, trustee, to be applied on the debts of Sandusky as provided in said general assignment; also, requiring Sandusky and wife to make plaintiff a deed of general warranty for the land, and place him in possession thereof. From this decree Spencer appeals, assigning numerous errors, many of which are merely incumbrances and useless appendages to the record. The main and really the only question necessary to consider is whether the circuit court erred in decreeing a specific performance, under

the circumstances of this case. The briefs filed by counsel are entirely too long drawn out, verbose, and abstract to be much assistance to the Court. Such briefs are of very little benefit, in comparison with the labor they impose on both counsel and Court, and the expense they inflict unnecessarily on litigants. Counsel should learn to condense, address their arguments to the Court, and not to their opponents, and should resist the temptation to vent private grievances, with which this Court has nothing to do, and cares nothing about.

The cases of *Broyles* v. *Bee*, 18 W. Va. 514; *Wamsley* v. *Stalnaker*, 24 W Va. 214; *Kimports* v. *Rawson*, 29 W. Va. 488, (2 S. E. 85;) and *Heavner* v. *Morgan*, 30 W. Vs. 335, (4 S. E. 406,)—are not in point here, for the reason that in all those cases the contracts had been carried out by the execution of a general warranty deed, and possession delivered and·taken thereunder, while in this case the contract is wholly executory, the purchase money being unpaid, except the one hundred dollars down, and possession has not been delivered but remains with the vendor. The contract has not been so far executed that either party would be injured by its rescission, except probably Sandusky or his creditors would lose the benefit of a good sale. Yet in these piping times of prosperity the land should be increasing, and not decreasing, in value. Specific performance of a contract to sell land will not be decreed in favor of the vendor unless his ability to make a title be unquestionable. *Griffin's Ex'r* v. *Cunningham*, 19 Grat. 571. "A defendant in proceedings for specific performance shall not be compelled to accept a title in the least degree doubtful. It is not necessary that he should satisfy the court that ·the title is defective, so that he ought to prevail at law. It is enough if it appears to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchase to controversy to maintain his title or rights incident to it. He ought not to be subjected, against his agreement or consent, to the necessity of litigation to remove even that which is only a cloud on his title." *Jeffries* v. *Jeffries*. 117 Mass. 184; *Butts* v. *Andrews*, 136 Mass 221; *Commissioners* v. *Armstrong*, 45 N. Y. 234; *Cunningham* v. *Blake*, 121 Mass. 333 In the case of *Christian* v. *Cabell*, 22 Grat. 82, it was held: "(1) In the contract

for the purchase of a fee-simple estate, if no incumbrance is communicated to the purchaser, * * * he must suppose himself to purchase an unincumbered estate. (2) The objection which a purchaser may make is not entirely confined to a doubtful title. It applies to incumbrances of every description which may in any manner embarrass the purchaser in the full and quiet enjoyment of his purchase. * * * (4) In some instances the court will decree specific performance if the vendor is prepared to comply with his covenants at the hearing, and the court will afford him a reasonable time to remove incumbrances and perfect his title. But this is a matter of favor to the vendor, only to be granted in cases which admit of such relief without prejudice to the rights of the vendee. (5) The court will not give time to the vendor when the defect to be remedied was known to the vendor or his attorney at the time of the contract, and was concealed from the purchaser. (6) Especially will such indulgence be denied to the vendor when, besides a failure to disclose the existence of incumbrances, an account is necessary to ascertain the state of the title, and the extent, nature, and amount of such incumbrances." In his opinion, on page 103, Judge Staples says: "In *Dalby* v. *Pullen*, 3 Sim. 29, a defect in the title, though known to the vendor's solicitor, was not communicated to the purchaser. The vice chancellor said that the parties, by such conduct, had precluded themselves from the benefit of the rule which prevails in the court as to the time allowed to vendors to remove objections to title. And accordingly a motion by the purchaser to be discharged from the purchase was granted, though the vendors had removed the defect before the motion was made. See, also, *Lechmere* v. *Braiser*, 2 Jac. & W. 287; *Fildes* v. *Hooker*, 3 Madd. 193; Sugd. Vend. 350. * * * I have seen no cause in which it has been held that a purchaser has been required to await the institution of a suit and the settlement of contested accounts between third persons, to afford the vendor an opportunity of removing incumbrances and perfecting his title." *Alvarez* v. *Brannan*, 7 Cal. 303.

Sandusky not only concealed the existence of the various liens against the property, but stated that the original Coplin trust was the only existing lien, which was controlled by himself. The plaintiff, as he says, is an old man,

—upward of sixty years of age,—and seeking to buy a home for himself and family, free from incumbrances, and not a lawsuit. He was at a time of life when he wanted ease, and not trouble, and especially the trouble of others, and did not want his estate wasted in litigation, even though it should prove successful in the end. The court took no account to ascertain what liens would be first in priority, and entitled to payment out of the purchase money, but left this matter to the trustee, Faris, after the payment of the Coplin trust lien; directing the residue of the purchase money paid to him. Thus, the plaintiff is left entirely to the mercy of the trustee, and may be compelled to sue to enforce a proper application of such purchase money, or to be compelled to defend his title against judgment-lien creditors, or his land might eventually be forced to sale by such creditors holding liens prior to his deed, although they might not gain anything by it, except to put him to the cost of defense, which, together with his lawyer's fees, and the expense of printing briefs, might end in devouring the estate, and leave him penniless in his declining years. Under such circumstances a vendee should not be compelled to take a title that he may be forced to defend, and run the risk of losing by oversight, mistakes, or failure of justice, or counsel's reasonable charges for services rendered. It matters not that the title is such that a lawyer or a purchaser might be willing to accept it and assume the risk of litigation. This is not what the plaintiff bargained for, but he agreed to pay good money, and expected a good title in return. The concealment and misrepresentation of the defendant, coupled with the present clouded uncertainty of the title, justify the equitable rescission of the contract. That the defendant loses a good bargain is his own fault, in not having been open with the plaintiff at the time of his purchase. The excuse that, if he had been, he would have lost the sale, does not justify his concealment, but calls for rescission. The decree complained of is reversed, and this cause is remanded to the circuit court, with direction to rescind the contract of sale, and place the parties in *statu quo* as near as may be; and to be otherwise disposed of according to the rules and principles of equity.

*Reversed.*