(31 Misc. Rep. 610.)

### VAN SCHAICK v. LESE.

(Supreme Court, Special Term, New York County. May, 1900.)

1. DEED—CONDITION SUBSEQUENT—WHAT CONSTITUTES.

Where a deed provided that it was given on the express condition that it should be void, and the estate thereby granted should revert to the grantors, if the premises should be used in any manner thereinafter prohibited, which clause was followed by a covenant by the grantee against the use of the premises for a distillery and other uses, the language creates a condition subsequent, and the deed does not convey a fee simple.

2. SAME—JOINT TENANCY.

Where the parties of the second part in a deed of lands were A., B., and C., trustees of the New York City Land Association, and the granting clause was to them, their heirs and assigns, forever, and the habendum was to them, the survivor of them, his heirs and assigns, to their own proper use, benefit, and behoof, as joint tenants, title passed to the grantees as joint tenants, and the word "trustees," etc., is merely descriptio personæ.

3. SAME—COVENANT LIMITING USE—INCUMBRANCE.

Where land is subject to a covenant restricting the use to which the land might be put, the land is not free from incumbrance, since any right exist-

ing in another, whereby the owner is restricted in his enjoyment of his property, is an incumbrance.

4. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—DAMAGES.
    Plaintiff agreed in writing to sell land to defendant, title to be in fee simple and unincumbered, and plaintiff to have the privilege, in case of inability to procure his wife's signature, of canceling the contract on returning to defendant his down payment, with interest, and $75 counsel fee for the examination of the title; that sum being fixed as liquidated damages in case of nonperformance by plaintiff by reason of inability to procure his wife's signature, or for any other reason. Plaintiff notified. defendant of readiness to convey, and defendant objected to the title. Plaintiff sued for specific performance, and defendant counterclaimed his expenses of examining the title. *Held*, that the vendee was not limited to $75, but could recover the reasonable amount of his expenses for examining the title.

Action for specific performance by Henry Van Schaick against Louis Lese. Judgment for defendant.

Ezekiel Fixman, for plaintiff.
Emanuel Austen (John D. Connolly, of counsel), for defendant.

FREEDMAN, J. This action is brought by the plaintiff to compel the defendant to specifically perform an agreement for the purchase of real property. There is no substantial dispute as to the facts in the case. The agreement in question was dated May 18, 1898. It provides for the sale by the plaintiff to the defendant of a lot of land on the south side of 106th street, in the city of New York, at an agreed price of $11,000. The defendant paid the sum of $500 down, and was to execute a purchase-money mortgage for the sum of $9,000, and pay the sum of $1,500 in cash, at the time of the delivery of the deed. The property was to be conveyed to him free and clear of all incumbrances, and it was also provided in the agreement as follows:

"And it is expressly understood and agreed, however, that in case the party of the first part is ready to deliver the deed of said premises previous to said 1st day of October, 1898, that the said party of the first part shall give notice to said party of the second part of his readiness; said notice to be in writing, and to be mailed to him at his residence, No. 231 East Sixtieth street, New York City, and thirty days from the date of such notice, provided such thirty days shall not extend beyond the 1st day of October, 1898, and in which event, on said 1st day of October, 1898, the party of the second part shall close this contract by executing and delivering to the party of the first part said bond and mortgage above specified, and pay him the balance of $1,500 as above specified. And it is also expressly understood and agreed by and between the parties hereto that in case the party of the first part is unable to close this contract by the 1st day of October, 1898, by reason of his inability to procure the signature of his wife to a deed of said premises, then this contract shall be deemed canceled and void and of no effect, and the party of the first part shall return to the party of the second part the $500 this day paid on the execution of this contract, with interest thereon from the date hereof until the time of such payment, together with a counsel fee for the examination of the title to said premises of $75, which sum is hereby fixed and agreed upon between the parties hereto as the stipulated damages to be paid by the party of the first part to the party of the second part in the event that he, the party of the first part, is unable to carry out the terms and conditions of this contract on his part by reason of the inability to procure said signature of his wife to said deed, or for any other cause or reason."

66 N.Y.S.—5

It appears that pursuant to the foregoing provisions in the contract the plaintiff notified the defendant in writing of his readiness to perform the contract, naming July 11, 1898, as the time for closing the title; that such time was adjourned by consent until July 18, 1898; that on the last-named day the parties met, and the plaintiff's attorney then tendered a deed duly executed, which deed, if the plaintiff's title was a fee simple, free from all incumbrances, would have been a compliance with the terms of the contract of sale; that the defendant was also at that time and place ready to consummate the purchase; that there was a mutual tender; that the plaintiff insisted on his ability to convey the premises according to his agreement; that the defendant insisted that the title of the plaintiff was not a fee simple, free from all incumbrances, as the premises were covered by a condition subsequent and a covenant against nuisances contained in prior deeds of said premises; and that the defendant was willing to perform said contract on his part on receiving from the plaintiff a deed free and clear from all incumbrances. Upon the refusal of the defendant to accept the deed tendered by the plaintiff, this action was brought. It was admitted upon the trial that the defendant procured the title to the premises to be examined at the expense of $20.40, and that such sum, together with the further sum of $150 for counsel fee for such examination, was a reasonable charge for such services. It was also admitted that the title to the premises in question was sufficient in one Gustavus A. Rollins, who acquired title thereto in 1851. From the record evidence introduced it appears that Rollins conveyed the premises aforesaid, by deed dated November 30, 1851, to "Elias Mooney, James F. Stansbury, and Joseph Queripel, trustees of the New York City Land Association, No. 1"; that Mooney and wife, Stansbury and wife, and Queripel and wife conveyed to one George Haws in July, 1853; and that plaintiff took title through Haws. The deed from Mooney, Stansbury, and Queripel contained the following clause:

"Provided, nevertheless, that this deed is given on the express condition that the same shall be void, and the estate hereby granted revert to the parties of the first part, their heirs and assigns, if the said premises shall be used or appropriated in any manner hereinafter prohibited. And the said party of the second part, for himself, his heirs and assigns, doth covenant and agree that the above-described premises shall not, nor shall any part thereof, be at any time hereafter used, occupied, or kept as a distillery, foundry, blacksmith shop, slaughter house, coal yard, or for brewing, soap-boiling, bone-boiling, frying fat, the use of steam power, a piggery, or any act or business or use that is considered a nuisance to desirable places of residence, or that shall be offensive and annoying to persons there residing."

The defendant in his answer and upon the trial urges two objections against the title, and such objections seem to be valid and well founded. They are: First, that the plaintiff is not seised of an estate in fee simple; and, second, that the premises are not free and clear from incumbrances. It is apparent that the deed from Mooney, Stansbury, and Queripel to Haws was delivered upon a condition subsequent. The provision incorporated therein is not, as contended by the plaintiff, a mere covenant running with the land, and does not fall within the class of cases cited by him. In the cases cited by the plaintiff's attorney, none contained such a plain and explicit condition

as in the deed in the case at bar, viz. "that this deed is on the express condition that the same shall be void, and the estate hereby granted shall revert," etc.  A mere right of re-entry reserved to a grantor has been held to be a mere right of action, and not an interest in the land.  Berenbroick v. Hospital, 23 App. Div. 343, 48 N. Y. Supp. 363.  And while "mere words in a deed will not be deemed sufficient to constitute a condition subsequent, entailing the consequences of a forfeiture of the estate, unless it appears from proof that this was the distinct intention of the grantor, and a necessary understanding of the instrument, the understanding may be sought, however, in the other words of the clause, and by reference to the surrounding circumstances."  Post v. Weil, 115 N. Y. 361, 22 N. E. 145, 5 L. R. A. 422.  Applying that rule to the case at bar, there is every indication, from the circumstances surrounding the grant herein from Mooney, Stansbury, and Queripel to Haws, that the condition in their deed was imposed as a part of the consideration, and that such restriction was evidently designed for the benefit of persons acquiring title to the several lots in the tract owned by them, which, at the time of the conveyance by them to Haws consisted of 108 lots lying between 4th and 5th avenues and 103d and 106th streets, of which the lot in question was one.  The restriction imposed was a reciprocal inducement to each purchaser to take title, and the grantees were so restricted in the use of the land as to prevent them from appropriating it to the purposes prohibited in the deeds.  The provision incorporated in such deed was therefore plainly a condition subsequent, and upon failure to comply therewith a reversion became possible.  That their intention was to reserve to themselves a more effectual remedy than that which a mere covenant would give is further evidenced by the fact that the provision aforesaid was inserted, as well as an express covenant on the part of the grantee, who was made to "covenant and agree for himself and his heirs and assigns" that the premises should not be used for any of the prohibited purposes.  This view was practically admitted by the plaintiff, who submitted upon the trial and placed in evidence certain alleged releases from the so-called "substituted trustee" of the deceased grantees named in the deed from Rollins to Mooney, Stansbury, and Queripel, and also from certain of the heirs at law of the surviving joint tenant; and, had the latter release been executed by all the heirs at law of the survivor of the joint tenants, there is no doubt but that it would have been effectual and conferred good title upon the plaintiff. But it appears that one of such heirs at law is an infant, and therefore has not joined in the release, and the right of such infant to any claim upon said premises in case of a violation of any of the conditions mentioned in the deed is still in existence.  Neither is the release executed by Moses H. Stansbury as "substituted trustee" sufficient to release the premises from the conditions imposed by the deed from Mooney, Stansbury, and Queripel to Haws, for the reason that although the deed to them, in describing the parties of the second part, reads as follows, "Elias C. Mooney, James F. Stansbury, and Joseph Queripel, trustees of the New York City Land Association, No. 1." the granting clause "grants and conveys to the parties of the

second part, their heirs and assigns, forever, all," etc.; and the habendum clause reads, "To the parties of the second part, the survivor of them, his heirs and assigns, to their own proper use, benefit, and behoof, as joint tenants." The deed, therefore, is not to them "as trustees." The premises are not conveyed to them or their successors, and the word "successors" is not found in the habendum clause. It imposes no duties upon the grantees as trustees, nor is there any person or corporation named therein as cestui que trust. It must be held, then, that the conveyance was to Mooney, Stansbury, and Queripel as individuals, and the word, "trustees," etc., is merely descriptio personæ. This is further borne out by the fact that in the deed from Mooney, Stansbury, and Queripel to Haws, each of the wives of the grantors unites with them in its execution, and such deed is executed by all the parties as individuals; and the reverter therein mentioned and provided for is to "the parties of the first part, their heirs and assigns," and it does not appear that the premises reverted to trustees, or that the trustees had any power to release the estate from the conditions and limitations imposed therein.

The second objection interposed by the defendant is equally fatal to the plaintiff's recovery herein. The premises are not free and clear from incumbrances, as the deed from Mooney, Stansbury, and Queripel, through whom plaintiff obtains title, contains a covenant which restricts the uses to which the premises might otherwise lawfully be put. Any right existing in another, whereby the owner is restricted in the enjoyment of his property, has been held to be within the meaning of the term "incumbrance." Raynor v. Lyon, 46 Hun, 227; Reynolds v. Cleary, 61 Hun, 590, 16 N. Y. Supp. 421; Kountze v. Helmuth, 67 Hun, 343, 22 N. Y. Supp. 204, s. c. 140 N. Y. 432, 35 N. E. 656; Presbyterian Church v. Steiner, 79 Hun, 314, 29 N. Y. Supp. 488. It is claimed by the plaintiff that the restriction must be such as to lessen the value of the land. Assuming that to be true, there is sufficient testimony in this case to warrant the finding that the limitation appearing upon the record of this title injuriously affects the value of the premises. The testimony on the part of the plaintiff was directed towards showing that the neighborhood where these premises were situated was occupied by what are known as "flat houses," and that the defendant intended to build that kind of a house, and had contracted for the purchase of the premises in question solely for that purpose, and that for that reason the value of the property was not diminished or affected by any of the restrictions named in the deed aforesaid. As to that, one restriction only need be mentioned to show the fallacy of the plaintiff's position. Among the prohibitions named is that of "the use of steam power." That language is broad, and is not limited in its application. The "use of steam power" is absolutely forbidden. Under the modern method of construction, the use of steam power in so-called flat houses has become almost a necessity. Elevators are run, and hot water and heat are furnished the inmates of such houses, thereby; and it needs no argument to show that its employment being prohibited would limit the sale, and affect the value of the premises in an injurious manner. From all the facts and circumstances in this case, it is clear that the

defendant was justified in refusing the title offered him by the plaintiff.

The plaintiff claims that, in case it is found that the defendant is entitled to a judgment herein, he is not entitled to costs, nor to more than the sum of $75 damages, by reason of the clause in the contract limiting the defendant's damages to that sum as stipulated damages in the event of the failure of the plaintiff to pass the title "for any cause." By the terms of his contract the plaintiff had a right to cancel and declare the contract void for any reason, and in that event he was required to restore to the defendant the sum of $500, paid at the execution of the contract, and the further sum of $75, fixed and agreed upon by the parties as stipulated damages. Had the plaintiff availed himself of this right, there would be reason in claiming that his liability to the defendant should be limited to the sum fixed by the agreement as damages for his failure to convey, but such provision applied only in case the plaintiff declared the contract canceled and void. This he did not do. On the contrary, he notified the defendant of his readiness to convey, and subsequently brought suit to compel the defendant to take title, thereby asserting that the contract was valid and enforceable. After such notification the defendant caused the title to be searched, expending therefor the sum of $170.40 in fees and expenses, which sum the plaintiff concedes is reasonable in amount; and the defendant is entitled to a judgment for that amount, together with the sum of $500, the sum paid by him at the time the contract was executed, and set up in his counterclaim herein, with costs of this action.

Ordered accordingly.