[No. 77. First Appellate District.—October 4, 1905.]

## JAMES J. WHELAN, Respondent, v. JOHN H. ROSSITER, Appellant.

VENDOR AND PURCHASER—CONTRACT FOR PERFECT TITLE—AGREEMENT FOR BUILDING RESTRICTIONS—ENCUMBRANCES—PERSONAL COVENANT —ENFORCEMENT IN EQUITY.—Under a contract for the sale of land calling for a perfect title, a recorded agreement imposing building restrictions upon the land shows an encumbrance upon the title, and even if the covenant be a personal one, though assuming to bind all representatives, yet being such as a court of equity might enforce against purchasers with notice, the purchaser was justified in declining to accept the title.

ID.—TITLE TO BE DEDUCIBLE OF RECORD—RIGHTS OF PURCHASER.— Under a contract for a perfect title, the purchaser is entitled to one which is fairly deducible of record, free from all reasonable doubt and exposure to litigation; and he is not required to make investigation as to facts *aliunde* that may affect the title, not disclosed by the abstract, furnished by the vendor, or actually known to the purchaser.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

John S. Drum, and Goodfellow & Eells, for Appellant.

Joseph Hutchinson, for Respondent.

HALL, J.—This is an appeal upon the judgment-roll from a judgment in favor of plaintiff whereby he recovered two thousand dollars, deposit on a contract for sale of a piece of real estate. By the terms of the contract fifteen days were allowed to examine title, and if found defective, purchaser was to state his objections in writing, and seller was to have a reasonable time to perfect title. Abstract of title to be furnished by seller. The abstract was furnished by defendant, and in due time plaintiff in writing specified to defendant his objections to the title, and thereafter defendant announced to plaintiff that he could not remove the restrictions and encumbrances upon said title complained of, and plaintiff thereupon demanded the return of his deposit, and on refusal brought this action.

The contract was dated February 18, 1901.

The objections to the title were as follows: It appeared from the abstract that, on the twenty-sixth day of August, 1874, all the then owners in fee, as tenants in common of all of Western Addition block 689, in which the property described in the contract is situated, and also of the adjoining blocks 684, 702, 703, and part of 685, entered into an agreement in writing, in and by which, for the express purpose therein stated of directly benefiting all of said property and enhancing the value of all of said lands, they covenanted and agreed as follows:—

1. That no buildings were to be erected upon any part of said lands except for private residences;

2. That no building, or any part thereof, erected upon any part of said premises should be used or occupied as a blacksmith or other shop, or as a grocery store, or saloon, or place of public amusement;

3. That no buildings or superstructure erected upon any part of said lands, except fences should be built within twenty feet of the street;

4. That no alleyway or private street should be opened through any portion of said lands.

By said agreement all the covenants thereof were expressly made binding upon all the parties thereto, their heirs, executors, administrators, and assigns, and any and all persons who claimed or derived their title or possession through any of the parties to said agreement; and said agreement further provided for injunction suits and suits for damages in case of violation.

The agreement was recorded April 3, 1877.

On the eighteenth day of November, 1898, defendant joined with other parties then interested in a portion of said block in an action in the superior court of the city and county of San Francisco, for the purpose of declaring invalid and canceling said agreement, on the ground that the same constituted a cloud or encumbrance upon said property. The complaint alleges that "said writing is a cloud upon the title of said plaintiffs to the lands owned by them, . . . and the so-called covenants contained in said writing . . . greatly interfere with and hinder the sale of said lands and the obtaining of loans upon mortgages upon said lands, and largely detract from the value of said lands." The prayer was to quiet title.

The defendant in said action answered, and set up said agreement, and claimed that the same was legal and valid according to its terms. In that action judgment went for plaintiff January 29, 1901, but defendant therein perfected an appeal to the supreme court, which was pending at the time of the trial of this present action.

Defendant deraigned title from some but not all of the parties to said agreement.

It appeared of record in the county recorder's office, but not by said abstract, that one of the owners signing said agreement had, before the signing thereof, mortgaged his property, and that the mortgagee had foreclosed and obtained a title free from the effect of such agreement, and after the date of said agreement, but before the recordation thereof, others of the owners had made conveyances of lands for value.

Appellant insists that, notwithstanding the agreement above referred to, and the litigation concerning it then actually pending, the title to the lot was not defective. In this regard it is insisted that the covenants in said agreement are

not such as run with the land (Civ. Code, secs. 1460-1462), and therefore do not affect the title to the land.

But a purchaser of land under a contract calling for a perfect title, or a title free from defects, is entitled to a title that is fairly deducible of record, free from reasonable doubt and litigation. (*Muller* v. *Palmer,* 144 Cal. 305, [77 Pac. 954] ; *Turner* v. *McDonald,* 76 Cal. 177, [9 Am. St. Rep. 189, 18 Pac. 262] ; *Reynolds* v. *Burrell,* 86 Cal. 538, [25 Pac. 67].)

Building restrictions and the like contained in grants of real estate are encumbrances on the title. (*Reynolds* v. *Cleary,* 61 Hun, 592; *Wetmore* v. *Bruce,* 118 N. Y. 319, [23 N. E. 303] ; *Kramer* v. *Carter,* 136 Mass. 504; *Jeffries* v. *Jeffries,* 117 Mass. 184; *Van Schaick* v. *Lese,* [31 Misc. 610], 66 N. Y. Supp. 64; 29 Am. & Eng. Ency. of Law, 612.)

In *Wetmore* v. *Bruce* it is said, "It is entirely competent for adjoining owners of land by grant to impose mutual and corresponding restrictions upon the lands belonging to each, for the purpose of securing uniformity in the position of buildings. The covenants being mutual and imposing such restrictions in perpetuity are in effect reciprocal easements, the right to the enjoyment of which passes as appurtenant to the premises. Observance of such covenants will be enforced by a court of equity."

The fact that the covenants do not run with the land is not the test as to whether a title is good. In some cases equity will enforce personal covenants. In the Law of Real Property in Conveyancing (Jones) it is said: "One who takes land with notice of a restrictive agreement affecting it cannot equitably refuse to perform it, though the agreement may not be a covenant which runs with the land, or creates a technical qualification of the estate conveyed." The author also quotes from *Whitney* v. *Union Railway Co.,* 11 Gray, 359, [71 Am. Dec. 715], where it is said: "The precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant, or agreement, will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform."

To the same effect is *Tulk* v. *Moxhay*, 2 Phil. 774, 13 Jur. 89, 18 L. J. N. S. Ch. 83.

In *Los Angeles etc. Co.* v. *Muir*, 136 Cal. 36, [68 Pac. 308], it was conceded that there are personal covenants enforceable in equity against the grantee of the covenantor.

Thus we see that, notwithstanding that under the Civil Code the covenants in the agreement may not run with the land, there is authority for the contention that a vendee of the land with notice could be compelled to perform them.

The title offered in this case was therefore one that was exposed to litigation (in fact, litigation concerning it was then pending), and was therefore doubtful.

In *Swayne* v. *Lyon*, 67 Pa. St. 436, it is held that a title is not good or marketable that exposes the vendee to litigation. In this case the doubt as to the title concerned a matter of law.

Every title is doubtful which invites or exposes the party holding it to litigation. (*Speakman* v. *Fouepaugh*, 44 Pa. St. 363; *Reighard's Estate*, 192 Pa. St. 111, [43 Atl. 413]; *Michenor* v. *Reinach*, 49 La. Ann. 360, [21 South. 552].)

In *Herman* v. *Somers*, 158 Pa. St. 424, [38 Am. St. Rep. 851, 27 Atl. 1050], it is said: "In equity a marketable title is one in which there is no doubt involved, either as to matter of law or fact."

In *Spencer* v. *Sandusky*, 46 W. Va. 582, [33 S. E. 221], it was held that a vendee for value purchasing a good title cannot be compelled to accept , litigious or clouded title, if there is reasonable ground to apprehend litigation with regard thereto, although the same may be satisfactory to a lawyer or speculator.

In *Fleming* v. *Burnham*, 100 N. Y. 1, [2 N. E. 905], it was held that a purchaser of a good title will not be required to determine a disputed question of fact or a doubtful question of law with reference thereto.

In *Daniel* v. *Shaw*, 166 Mass. 582, [44 N. E. 991], the freedom of the vendor's title from encumbrances depended on the constitutionality or unconstitutionality of a certain statute, and the court said: "The plaintiff concedes that his title is not good if the statute is constitutional. The parties also differ in their construction of the statute. The city of Boston is interested in both of these questions. It has been allowed

1 Cal. App.—45.

to file a brief, but it is not a party to the record, and would not be precluded from litigating the same questions anew if an opinion in the present case were for the plaintiff. The defendant would be exposed to the chance of such litigation if compelled to accept the title now offered. . . . The plaintiff asks us to declare his title good by declaring the statute unconstitutional. The defendant ought not to be compelled to accept such a title,''—and cited *Jeffries* v. *Jeffries,* 117 Mass. 184; *Chesman* v. *Cummings,* 142 Mass. 65, [7 N. E. 13]; *Hunting* v. *Damon,* 160 Mass. 441, [35 N. E. 1064]; *Abbott* v. *James,* 111 N. Y. 673, [19 N. E. 434]; *Fleming* v. *Burnham,* 100 N. Y. 1, [2 N. E. 905].

At the time of the execution of the contract of sale which gives rise to this litigation there was litigation actually pending concerning the validity and effect of the agreement affecting the land sold. We cannot under the authorities say that the questions of law involved were so free from doubt that the vendee should decide them at his peril. If he had completed the purchase he would have been obliged to proceed with the litigation, probably employ counsel at much expense, or take the chances of an adverse result in the supreme court.

We have not overlooked the claim made by appellant that by reason of matters appearing of record, but not shown in the abstract, the agreement had become of no effect. Aside from the consideration that litigation was actually pending affecting the validity of the agreement, we do not think that a purchaser is required to make investigations as to facts that may affect the title, not disclosed by the abstract; furnished under the contract, by the vendor or actually known to the vendee. (*Smith* v. *Taylor,* 82 Cal. 533, [23 Pac. 217].)

For the reasons above set forth the judgment is affirmed.

Cooper, J., and Harrison, P. J., concurred.