[Civ. No. 14175. First Dist., Div. One. June 12, 1950.]

ANTONIO GEORGE et al., Respondents, v. ELBERT M. COLVIN et al., Appellants.

Bohnett, Hill, Cottrell & Bohnett, L. D. Bohnett for Appellants.

Crist & Stafford and John M. Donegan for Respondents.

SCHOTTKY, J. pro tem.—Elbert M. Colvin and Leona J. Colvin were owners of a house and lot near Los Altos in Santa Clara County. Antonio George and Lucia D. George were the agents for S. Iacobucci and Jane Doe Iacobucci, the parents of Mrs. George. The Iacobuccis desired to purchase a home in that vicinity and move from Rhode Island. By written deposit receipt dated December 1, 1947, the Colvins agreed to sell said house and lot to the Georges, who were acting for the Iacobuccis, for $11,500, and the buyers made a $4,000 down payment which was held in escrow. The written agreement contained the provision ''that in the event the title to said property shall not prove marketable and said sellers shall not perfect, or be able to perfect same within 90 days from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder.''

The Iacobuccis moved into the house on December 15, 1947, and the Colvins moved into a trailer in a trailer court. On or about January 13, Mr. Iacobucci went to the Love Realty Company and had a conversation with one Nicholson, the agent who consummated the sale. There is a dispute as to whether Mr. Iacobucci at that time and during a visit later with Mr. and Mrs. Colvin stated that he was not going through with the contract. Iacobucci testified: ''I think I went in [to the office of Love Realty Company] to find out if I could sell the property. That is what I tried to do . . . I told him that I would like to pull out.'' Mr. and Mrs. Iacobucci and Mr. and Mrs. George called on the Colvins at the home of a son of the Colvins on the night of January 15, 1948. Mr. Iacobucci testified: ''I went in there and told the Colvins I couldn't find work here and I would like to pull out if I

could. I am willing to pay you [for] your troubles, what I have gone through." They could not come to an agreement. Mrs. Colvin stated: "I will see my attorney and see what he says." The following day Mr. Iacobucci consulted his attorney.

On February 5, 1948, an action was commenced by Antonio George and Lucia D. George against the Colvins, praying for the return of the $4,000 and the termination of their obligations under the contract. The complaint alleged that under the contract of December 1, 1947, the Colvins were to convey a marketable title to the plaintiffs within 90 days; "That the defendants Colvin cannot convey marketable title in that said property is subject to a right of way over the northerly 1.6 feet thereof and subject to building and other restrictions"; and "That defendants Colvin have not and cannot within said time convey marketable title and have waived the right to ninety (90) days time within which to so clear said title."

The defendants' answer admitted the agreement to convey a marketable title "within ninety days upon payment by plaintiffs of the full purchase price of said property," denied that the property was subject to a right of way, admitted the restrictions, but alleged that they did not detract from the marketability of the title to the property, and denied "the allegations set forth in Paragraph VI of said complaint, except that said defendants admit that they consented that suit might be commenced prior to the expiration of said ninety day period and waived no other rights." As a separate defense the answer alleged an estoppel—that prior to the execution of the contract the plaintiffs were put on inquiry as to the restrictions on the property and had actual knowledge that the property was restricted to use for residential purposes, and that due to plaintiffs' insistence the defendants gave immediate possession and thereafter sold their furniture at a loss and were subjected to the inconvenience of living in a trailer.

S. Iacobucci and Jane Doe Iacobucci were brought in as parties by a cross-complaint filed by the defendants on the ground that it had been agreed by and between the parties that the $4,000 down payment was to be retained by the defendants as liquidated and agreed damages in the event the plaintiffs failed to complete the purchase, and "that said agreement was incorporated in and became a part of said writ-

ten contract for the sale and purchase of said real property";
that the damage suffered by the defendants by reason of their
removal from the house, selling of the furniture at a loss
and living in a trailer exceeded $4,000; that the defendants
executed "a good and sufficient deed" to the plaintiffs and
placed it in escrow and have at all times been "ready, willing
and able to do, and did do and perform, all things required by
them to be done by the terms of said agreement of sale and
purchase"; and that on or about January 13, 1948, the plain-
tiffs notified the defendants that they would not complete the
purchase according to the terms of the contract and since
then have refused to perform. The defendants by their cross-
complaint asked that they be declared the sole owners of the
deposited money, that they have costs and such other relief as
might be proper.

The answer to the cross-complaint alleged the inability of
the defendants to furnish a marketable title, and by a supple-
mental answer it was alleged that the defendants and cross-
complainants had "sold the real property herein for the sum
of Ten Thousand Dollars ($10,000) net to them, less cost of
title policy and revenue stamps upon the deed."

Prior to the trial the easement for a right of way was re-
moved by a quitclaim deed and was not involved in the action.

The trial court found in favor of plaintiffs and a memo-
randum opinion based its decision upon the grounds that the
restrictions made the title unmarketable and that the evi-
dence did not establish any estoppel. Judgment was entered
awarding plaintiffs the return of the $4,000 down payment
and that defendants Colvin take nothing by reason of their
cross-complaint. Defendants' motion for a new trial was
denied and defendants and cross-complainants Colvin have
appealed from the judgment.

Appellants contend that the judgment should be reversed,
and make the following points: (1) The title was at all times
marketable; (2) respondents are estopped to claim unmarket-
ability by reason of restrictions; (3) respondents repudiated
their contract and thereby released appellants from per-
formance; (4) the evidence is insufficient to support certain
findings. We shall discuss these points in the order of their
statement.

The restrictions upon the lot here involved were,
briefly stated, as follows: No building shall be built within
20 feet of the northerly line of said lot; there shall only be
single family dwellings which shall be on plots of not less

than 5,000 square feet nor closer than 5 feet to any interior side boundary line; no commercial enterprises shall be carried on, nor anything be done that might be or become an annoyance or nuisance; any structure shall be of a certain minimum floor size and cost no less than a set minimum, and no cloven-footed animals shall be kept nor shall any fowl, animal or creature of any kind be kept or bred for commercial purposes.

Any title that is not free from encumbrances cannot be considered a marketable title and we think there can be no doubt that the restrictions hereinbefore set forth substantially interfere with many uses which an owner reasonably might wish to make of the property, which was in an unincorporated area and which was near a commercial area. As was said in the case of *Whelan* v. *Rossiter,* 1 Cal.App. 701, at page 704 [82 P. 1082]: "Building restrictions and the like contained in grants of real estate are encumbrances on the title." And in *Tandy* v. *Waesch,* 154 Cal. 108 [97 P. 69], our Supreme Court, in referring to restrictions far less stringent than the ones in the instant case, said at pages 110-111: "The restrictions, reservations, and covenants constituted encumbrances upon the title of defendant, which, not being removed, justified plaintiff in seeking a recovery of his partial payment under defendant's contract to convey to him a title 'free and clear of all encumbrances.' Indeed, this proposition is not seriously disputed, but if it were it finds abundant support. (*Quatman* v. *McCray,* 128 Cal. 285 [60 P. 855]; *Whelan* v. *Rossiter,* 1 Cal.App. 701 [82 P. 1082]; *Goldstein* v. *Hensley,* 4 Cal.App. 444 [88 P. 507]; *Wetmore* v. *Bruce,* 118 N.Y. 319 [23 N.E. 303]; *Ayling* v. *Kramer,* 133 Mass. 12; Brewster on Conveyancing, sec. 201; Warvell on Vendors, sec. 312.)"

In 25 California Jurisprudence, at page 635, section 132, it is stated that "A title to be good and marketable must be free from encumbrances," and on page 637, section 134, of the same volume, "Building restrictions and the like contained in grants are encumbrances on the title."

We believe that the general rule, sustained by the great weight of authority, is correctly set forth in 57 American Law Reports, at page 1414, as follows: "The rule that the vendee in an executory contract for the sale of land is entitled to a marketable title, which means a title in fee simple, free from encumbrances, entitles a vendee to a title free from any restrictions which affect the full enjoyment of the property; hence, restrictions as to the use to which the premises may be

put, or as to the location, character or kind of buildings, depth of foundations, etc., which may be erected in or upon the land, render the title unmarketable. And this is true without reference to the beneficial purpose of the restriction. It is no defense to show by the opinion of experts that the value of the property is not diminished by the restrictions. But it has been held that a building restriction which operates to the mutual benefit of different owners does not render the owner's title unmarketable.''

Appellants argue that the true rule in California is stated in the following language in *Staton* v. *Buster,* 79 Cal.App. 428, at page 432 [249 P. 878] : ''Much learning has been expended in giving definitions as to good and marketable titles. The following appears to be one supported by the weight of authority, to wit: 'A marketable title, to which the vendee in a contract for the sale of land is entitled, means a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear on such transactions, be willing and ought to accept.' (*Todd* v. *Union Dime Sav. Inst.,* 128 N.Y. 635 [28 N.E. 504] ; *Cummings* v. *Dolan,* 52 Wash. 469 [132 Am.St.Rep. 986, 100 P. 989].) '' However, a reading of that decision shows that it did not involve building restrictions at all. The vendor tendered a deed to real property signed only by himself and the vendee contended that it did not convey a marketable title because it was not signed by the vendor's wife also. The appellate court held that the wife had nothing to convey and that her signature was not necessary to make the title marketable. The court then went on to give the quotation hereinabove set forth. We do not believe that the quoted language from *Staton* v. *Buster* can be held to sustain appellants' argument that their title was a marketable one.

Appellants also argue that the restrictions did not render the title unmarketable because such restrictions are ''substantially the same'' as those in the county zoning ordinance, and appellants quote the following from 57 American Law Reports, at page 1419: ''It would seem that a restriction does not affect the marketable quality of the title, where the vendee is not thereby required to do, or refrain from doing, anything which the law itself does not require.'' However, as pointed out by respondents, the restrictions set up by the deed are considerably more stringent than those provided in the ordi-

nance, and the former, not the latter, provide for race restrictions, limitations as to the cost of buildings, more stringent set-back lines, absolute prohibitions on commercial or manufacturing enterprises (ordinance permits ''home occupations''), and more stringent restrictions on the keeping of fowl and livestock, the ordinance allowing fowl and cloven-footed animals, such as cows and goats, both for use and commercial purposes.

The appellants' next contention is that the respondents are estopped to assert the unmarketability of the title by reason of restrictions because (1) they knew it was a restricted area, (2) the appellants had suffered serious loss and hardship by immediately moving out at the respondents' insistence, (3) all elements of estoppel are present and to allow recovery to the respondents would be to work a fraud and hardship upon appellants. The trial court found that the respondents were not estopped from asserting defects in the title nor had they waived their ''right to have marketable title.'' The only evidence of the respondents' knowledge of restrictions was as follows: Mr. Colvin testified that, ''Talking about the location and I told them that it was a nice location for the reason that it was restricted and it couldn't be any shacks built around there.'' Such was stated in the presence of Mr. and Mrs. George and Mr. Nicholson. He also stated that, ''Well, I said that I—our reasons for selling the property, that we were buying a duplex in Redwood City, that we would like to have bought the lot across the street and put a duplex there, but it was a restricted district and we couldn't put a duplex on there.'' Substantially the same testimony was given by Mrs. Colvin. It might be that the knowledge, if any, of the Georges could be imputed to the Iacobuccis, since the Georges were their agents, but even knowledge of the Iacobuccis would not amount to an estoppel to demand marketable title or a waiver. The general rule, as stated in 57 American Law Reports, at page 1425, is as follows: ''A building restriction which seriously impairs the value of the property will excuse performance upon the part of the vendee, although he had actual knowledge of the restriction at the time of the contract. And it is the general rule that the fact that the vendee knew of building restrictions does not preclude him from objecting to the title on that account, . . .'' Such rule is also given in 55 American Jurisprudence, Vendor and Purchaser, section 251, at page 706. The statements made to the Georges, moreover, would lead one to suppose only that there were zoning

restrictions, not that there were restrictions in the chain of title. Any hardship suffered by the Colvins would not be as great as that suffered by the Iacobuccis should they be required to sacrifice their life savings because they failed to go through with a contract which the Colvins were unable to perform.

■ Appellants' third major contention is that respondents repudiated the contract and thereby released the appellants from any obligation to perform. However, there is a clear conflict in the evidence as to whether Mr. Iacobucci said he would not continue with the contract or whether he merely asked whether he could be relieved from the contract. The trial court resolved this conflict in favor of respondents and held that there had not been a repudiation.

■ Appellants next contend that the evidence is insufficient to support the finding "that defendants Colvin agreed that they would not and they did not, raise the defense that this action was brought prior to ninety (90) days from and after December 1, 1947, and that they were unable to and did not perfect said title within said ninety (90) days."

On the trial it was stipulated that no deed of any kind was tendered at all by appellants. It was also stipulated that the appellants would not raise the defense that the complaint was filed prematurely, before the 90 days in which the appellants had to tender marketable title had elapsed. The latter stipulation was made so that the property could be resold, which it was, for $10,000. From this stipulation it is fairly inferable that appellants either would not or could not perfect title. Certainly if they had any intention of removing the restrictions they would have alleged in their pleadings or asserted at the trial that they would remove the restrictions. It is clear that appellants were convinced that their title was marketable without the removal of the restrictions, and that they chose to proceed with the trial on that basis. Hence it is quite immaterial whether or not they could have removed the restrictions as they neither did so nor offered to do so.

No other points require discussion.

In view of the foregoing, we conclude that the record and the authorities amply support the conclusion of the trial court that respondents were entitled to the return of their $4,000 down payment, and that the judgment should be and hereby is affirmed.

Peters, P. J., and Bray, J., concurred.