[Civ. No. 15621.   First Dist., Div. One.   Feb. 16, 1954.]

R. H. HARTMAN, Plaintiff and Appellant, v. LOUIS RIZ-
ZUTO, Respondent; MOREALI AND COMPANY et al.,
Cross-Defendants and Appellants.

Rankin, Oneal, Luckhardt, Center & Hall and J. E. Longi-
notti for Appellants.

O. Vincent Bruno for Respondent.

WOOD (Fred B.), J.—The principal question upon this appeal is whether or not a rear yard requirement of a municipal zoning ordinance continues operative and makes the land affected not ''marketable'' or not ''free and clear of all incumbrances,'' under the circumstances of this case.

Plaintiff and cross-defendant R. H. Hartman owned an L-shaped parcel of realty near the intersection of George and First Streets in the city of San Jose. It consisted of two lots, numbered 15 and 17, each 137.50 feet in depth. Lot 15, approximately 47 feet wide, fronted on George Street. Lot 17, 68.75 feet wide, fronted on First Street and at the rear abutted the rear half of Lot 15.

In 1941, Hartman built a duplex dwelling on the front portion of Lot 15. The rear wall of the building was about 63 feet in from George Street. The applicable ordinance required this building to have an open rear yard space 25 feet in depth, extending clear across the width of Lot 15. The plot plan which Hartman submitted to the city with his application for a building permit showed that the lot had a depth of 137 feet. It also showed the precise location of the proposed building on the lot and no structure on the lot to the rear of the building. In his application for a permit to build ''in accordance with Plans, Specifications and Plot-plan filed'' therewith, Hartman agreed that he would ''in all things strictly comply with the conditions of this permit, and with all laws and ordinances governing the erection, alteration and occupancy of buildings in said City of San Jose.'' The desired permit was issued. It granted permission to build a duplex ''in accordance with'' the application which Hartman had made and filed.

In 1946, Hartman sold to Dr. Turco the front half of Lot 15, retaining the unimproved rear half of the lot. This divided into two ownerships the rear yard open space required for the duplex, Turco acquiring 5 feet of it in depth and Hartman retaining title to the remaining 20 feet. It also converted Hartman's L-shaped holding, with frontage on two streets, into a rectangular parcel (Lot 17 and the abutting rear half of Lot 15), fronting on First Street. Lot 17 was improved with a four-apartment building.

In 1951, Hartman entered into a contract with defendant and cross-complainant Louis Rizzuto for the sale, as a single parcel, of Lot 17 and the rear half of Lot 15, for the price of $35,000, Rizzuto depositing $5,500 in escrow. The contract declared that ''title to said premises is to be shown free and

clear of all incumbrances'' save for certain exceptions not here relevant, and that if title ''shall not prove marketable'' and seller not be able to perfect the same within 90 days, ''the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligations hereunder.''

Before the escrow transaction was consummated, Rizzuto gave notice of rescission of the contract, predicated upon asserted misrepresentations concerning the number of apartments available for lease, and demanded the return of his deposit. Plaintiff filed suit claiming the $5,500 deposit as due and owing to him. Rizzuto cross-complained, alleging rescission upon the ground mentioned and demanding that the $5,500 be returned to him. At the close of the trial Rizzuto was permitted to amend his cross-complaint to allege that the purported sale was in violation of the San Jose Municipal Code and that Hartman could not produce a marketable title.

The trial court found Hartman knew but never informed Rizzuto of the facts above narrated concerning the duplex, its required rear yard area, and the sale to Turco; that ''in fact a portion of said property, subject to the contract of February 14, 1951 herein, could not be legally used for construction purposes, and by law was required to be kept unimproved. That the said Cross-Defendant knew at all times that Cross-Complainant contemplated the purchase of said First Street property principally for income purposes''; and that ''by reason thereof, there was a substantial and material failure of consideration to the Cross-Complainant herein, which fully justified and warranted Cross-Complainant's rescission of the contract of sale.''

Accordingly, judgment was rendered that Hartman take nothing and that Rizzuto recover from Hartman and the escrow holder the $5,500 deposit with interest since the date of deposit.

The judgment should be affirmed. As orally stated by Honorable M. G. Del Mutolo, the judge who made these findings and rendered this judgment: ''Now, there is no question about it, that Mr. Hartman could sell that property, yes, he could sell it all right, but what good is that property to them if there was a certain restriction in the rear that they could not build on it? Now, whether the City would have permitted them to build on that 47-foot strip, or not, that's a different story, as long as they had a right to build

on it, but as the ordinance stands at the present time, the City could not have given them permission to build on that 47-foot strip," and the "Rizzutos were not told that they could not build on this 47-foot strip, and, consequently, the 47-foot strip would be of no use to them, or even if it was of use to them, when they go to re-sell the property, they would have to tell the prospective purchasers that so many feet of that land, of that lot, could not be used for any buildings, and I think that when a person buys land, he should be told just exactly what he's getting, if he can't see for himself. If he can see for himself, that's well and good, but if he can't see for himself, which in this case they could not see for themselves, I think they have a right to rescind the sale, so that's the judgment that this Court is going to make, that the sale is rescinded."

Judge Del Mutolo was quite right in so holding. "Any title that is not free from encumbrances cannot be considered a marketable title and we think there can be no doubt that the restrictions hereinbefore set forth [including set-back lines, single family dwellings only, minimum yard and floor areas] substantially interfere with many uses which an owner reasonably might wish to make of the property, which was in an unincorporated area and which was near a commercial area. As was said in the case of *Whelan* v. *Rossiter*, 1 Cal.App. 701, at page 704 [82 P. 1082] : 'Building restrictions and the like contained in grants of real estate are encumbrances on the title.' And in *Tandy* v. *Waesch*, 154 Cal. 108 [97 P. 69], our Supreme Court, in referring to restrictions far less stringent than the ones in the instant case, said at pages 110-111: 'The restrictions, reservations, and covenants constituted encumbrances upon the title of defendant, which, not being removed, justified plaintiff in seeking a recovery of his partial payment under defendant's contract to convey to him a title "free and clear of all encumbrances." . . .' " (*George* v. *Colvin*, 98 Cal.App.2d 57, 61 [219 P.2d 64].)

The building restrictions in those cases were imposed by deed or contract, not by municipal ordinance. The imposition of similar restrictions by municipal ordinance does not of itself create "encumbrances" which entitle a purchaser to rescind upon the ground that the seller's title is not "marketable." The parties are deemed to have contracted in the light of applicable restrictions imposed by law. (See cases collected in 175 A.L.R. 1055 at 1056-1057.) However, we

have here something more than the mere impact of the ordinance. We have a building which was constructed some years ago under conditions which at the time involved no violation of the ordinance but has since been cut off from the greater part of its required rear yard and put in separate ownership. This gives Lot 17 and the rear portion of Lot 15 the appearance of a single parcel entirely dissociated from the building. There is nothing about this situation that would give Rizzuto, upon inspecting the premises, reason to believe or to suspect that an area 20 feet by 47 feet is dedicated and set apart as an open space not to be built upon. These circumstances presented questions of fact for determination by the trial judge. His determination is supported by the evidence.

This case presents factual and legal issues similar, though not identical, to those which were involved in *Curran* v. *Heslop*, 115 Cal.App.2d 476 [252 P.2d 378]. There the land under purchase was improved with a dwelling. The porch had been enclosed in violation of the local building code and the state housing act. As a result, the bedroom and kitchen were without windows opening directly into a street, public alley, yard or court as required by the code and the act. Those violations were not apparent. They were deemed material. A judgment approving rescission by the purchaser was affirmed.

Hartman contends, in effect, that the ordinance at most imposed upon him as owner of Lot 15 a mere personal obligation to provide and maintain an open space extending 25 feet to the rear of the duplex; that if he violated the obligation when he conveyed to Turco, retaining title to the rear 20 feet of the open space, his liability, if any, was of interest solely to the city, not a matter of interest to any third party nor to a subsequent purchaser from him of the remainder of the lot.

That is a misconception of the meaning and application of the significant provisions of the ordinance. Those provisions, applicable to zones in which Lot 15 lies, declare: ". . . the minimum dimensions of yards (in feet) shall be" 25 feet for a rear yard on an interior lot (§ 9105.1 of the ordinance). " 'Yard, Rear' is a yard extending across the full width of the lot and measured between the rear line of the lot and the rear line of the building" (§ 9101.42). " 'Yard' " is an open space other than a court on the same lot with a building unoccupied and unobstructed from the ground upward except as otherwise provided in sections 9106.1 to

9106.7'' (§ 9101.40). ''Every part of a required yard shall be open from its lowest point to the sky unobstructed, except for the ordinary projection of sills, belt courses, cornices, eaves, and chimneys; provided however that none of these shall project into a minimum yard more than twenty-four inches'' (§ 9106.2). ''An accessory building may occupy not more than thirty percent of a required rear yard'' (§ 9106.6). '' 'Lot' is land occupied or to be occupied by a building and its accessory buildings together with such open spaces as are required under this Chapter, and having its principal frontage upon a street or officially approved place'' (§ 9101.26). '' 'Lot Lines' are the lines bounding a lot'' (§ 9101.30). ''. . . No lot area shall be so reduced or diminished that the yards or open spaces shall be smaller than prescribed by this Chapter . . . No yard or other open space provided about any building for the purpose of complying with the provisions of these regulations shall be considered as providing a yard or open space for any other building provided further that no yard or open space on an adjoining property shall be considered as providing a yard or open space on a lot whereon a building is to be erected . . . Every building erected shall be located on a lot as herein defined and in no case shall there be more than one dwelling on one lot except as hereinafter provided.'' (§ 9102.45.) Violations are punishable as misdemeanors, each day of the continuation of a violation being a separate offense; any condition permitted to exist in violation of the ordinance is a public nuisance, to be summarily abated (§ 1200).

This ordinance deals with land and imposes limitations and restrictions upon the use of land. Enacted in the exercise of the police power for the preservation of the public health and welfare, it speaks continually and unceasingly each and every day throughout the years until modified by amendment or repeal. It constantly and uninterruptedly imposes these use limitations and restrictions upon each parcel of land to which it applies, whether the land remains in the same ownership or changes ownership from time to time. The requirement that there be an open space 47 feet by 25 feet immediately in the rear of the duplex which Hartman built in 1941 is fully as operative today as it was prior to the sale to Turco. It conceivably might not continue effective as against a purchaser for value without notice, but we do not have that question. Before the escrow was consummated,

Rizzuto learned about the open space requirement and demanded the return of his deposit.

Hartman treats his division of Lot 15 and his sale of the front half to Turco as the creation of two "lots" which he calls the "Turco lot" and the "Hartman lot." He then invokes that clause of section 9102.45 of the ordinance, above quoted, which declares that "no yard or open space on an adjoining property shall be considered as providing a yard or open space on a lot whereon a building is to be erected." He says that when he cut the lot in two, no part of the property he retained could thereafter (under § 9102.45) provide any part of the open space that might otherwise be required for the Turco duplex. That is a specious argument which, as its starting point, takes the quoted clause entirely out of context. It is a sufficient answer to point out that this clause applies to a building which "is *to be* erected," not to one which "has been" erected. This clause was not intended to be used and cannot be used to reduce a rear yard from 25 feet to 5 feet by selling off a portion of the property after the building has been erected with a yard area which conforms to the mandate of the ordinance.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1954.